ROBINSON-SHORE DEVELOPMENT CO., A CORPORATION, PLAINTIFF, v. WILLIAM R. GALLAGHER, CATHERINE GALLAGHER, HIS WIFE, HARRY H. LAKE, HARVEY L. GANDY AND KATHRYN GANDY, HIS WIFE, STATE OF NEW JERSEY, EDWARD L. JOHNSTONE AND AN-GELINA L. JOHNSTONE, HIS WIFE, DEFENDANTS.

Superior Court of New Jersey
Chancery Division

Decided January 22, 1957.

*Mr. Albert B. Melnik (Messrs. Hermann, Melnik & Lowengrub,* attorneys) for plaintiff.

*Mr. Paul J. Farley (Mr. Julius Waldman* and *Mr. M. Milton Singer,* of counsel) for defendants Gallagher.

*Mr. French B. Loveland* for defendants Gandy and Johnstone.

HANEMAN, J. S. C.   On August 14, 1956 this court filed its conclusions in the above entitled matter after trial and argument.   Upon an appeal to the Appellate Division of the Superior Court, the defendants conceived that they had over-looked facts which appear in the chain of title and which conceivably might have changed the conclusion arrived at by the court.   Upon application to the Appellate Division the matter was referred to this court by an order which reads in part as follows:

"ORDERED that this cause be remanded to the Superior Court of New Jersey, Chancery Division, Cape May County, in order that the trial court may consider and pass upon the legal effect of the following: * * * and determine whether the aforementioned proofs cured any defect that may have existed in defendants' title."

the appeal being held in abeyance for a decision upon the other questions of law raised by the defendants.   In the court's initial conclusions, judgment was rendered against the defendants.

In addition to the chain of title set forth in the original opinion (see 41 *N. J. Super.* 324 (*Ch. Div.* 1956)) there appear the following instruments:

Deed dated November 30, 1925 from John Axford Higgons and Ella W. Higgons, his wife, to Kathryn M. Connolly, recorded in the Clerk's Office of Cape May County in Book 428 of Deeds, page 12.   This deed purported to convey the interest of Martha Ann Blakeman a one-third interest in the lands here involved to the said Kathryn M. Connolly.

The court, by its prior opinion herein filed, concluded that the Higgons had no title to or interest in said lands.

As far as here material, this conveyance contained the following phraseology:

"* * * convey and confirm unto the said party of the second part, their heirs and assigns, all their undivided one third interest in and to all and singular of a certain island of sedge marsh situate in the Upper Township of Cape May aforesaid lying between the Upper Main and Middle Thoroughfare that falls into Corson's Inlet, * * *

Being the same parcel or tract of land which Ocean City Association by indenture bearing date the thirty first day of May A. D. 1907

and recorded in Clerk's Office of Cape May County, New Jersey on the eighth day of June A. D. 1907 in Deed Book 218 Page 129 &c., granted and conveyed unto the said John Axford Higgons, in fee. Which is all their right, title and interest in the said Martha Ann Gandy or 'Blakeman' Island, and in the ocean front land in Ocean City, New Jersey, southwest of fifty-ninth Street, to Corson's Inlet. * * *

And the said parties of the first part doth by these presents, covenant, grant and agree to and with the said party of the second part, her heirs and assigns, that they the said parties of the first part and their heirs all and singular the hereditaments and premises hereinabove described and granted, or mentioned and intended so to be, with the appurtenances, unto the said party of the second part, her heirs and assigns, against them the said parties of the first part and their heirs and against all and every other person or persons whomsoever lawfully claiming or to claim the same or any part thereof, shall and will warrant and forever defend."

On the same date the said Kathryn M. Connolly made, executed and delivered a purchase money mortgage to John Axford Higgons and wife, recorded in Mortgage Book 235, page 442, which said mortgage, as far as here material, contained the following phraseology:

"* * * doth grant, bargain, sell, release and confirm, unto the said party of the second part, their heirs, and assigns, all the undivided one-third interest in and to all and singular of a certain island of Sedge Marsh situate in the Upper Township of Cape May aforesaid lying between the upper, main and middle thoroughfare that falls into Corson's Inlet * * *.

Being the same tract of land which John Axford Higgons and Ella W. Higgons, his wife, by deed bearing even date herewith and intended forthwith to be recorded, granted and conveyed unto the said Kathryn M. Connolly, in fee. Which is all their right, title and interest in the said Martha Ann Gandy or 'Blakeman' Island, and in the Ocean Front Land in Ocean City, New Jersey, Southwest of Fifty Ninth Street, to Corson's Inlet. * * *

* * * and that the said party of the second part, their heirs and assigns, shall and may from time to time, and at all times after default shall be made in the performance or the proviso or condition herein contained, peaceably and quietly enter into, have, hold, use, occupy, possess and enjoy all and singular the above granted and bargained premises, with the appurtenances, without the let, suit, trouble, hindrance or denial of the said party of the first part, her heirs or assigns, or of any other person or persons whatsoever."

Thereafter, on December 1, 1925 the Ocean City Association made, executed and delivered a conveyance to Kathryn

M. Connolly conveying the lands here involved, which said deed was recorded in the Clerk's Office of Cape May County in Book 419 of Deeds, page 264.

The court, by its prior opinion herein filed, concluded that the Ocean City Association had title to said lands.

Said Kathryn M. Connolly thereafter conveyed the lands and premises to Southern Gardens, Inc. on December 1, 1925, which said deed was recorded in the Clerk's Office of Cape May County in Book 424 of Deeds, page 165.

Default having been made under the terms of the mortgage from Connolly to Higgons, they filed a complaint for fore-closure thereof. As a result, Forrest M. Rich, Sheriff of the County of Cape May, made, executed and delivered a deed of conveyance dated October 5, 1931 to John Axford Higgons and Ella W. Higgons, his wife, which said conveyance was recorded in the Clerk's Office of Cape May County in Book 528 of Deeds, page 212. As far as here material, this deed reads as follows:

"WHEREAS, on the 27th day of June in the year of our Lord one thousand nine hundred and thirty-one, by a certain decree made in our Court of Chancery, before our Chancellor, at Trenton, in a certain cause therein depending, wherein John Axford Higgons and Ella W. Higgons, his wife, are complainants, and Kathryn M. Connolly, Southern Gardens, Inc., Feldman Realty Company, the Trenton Trust Company, Sogar Corporation and Frederick W. Klein, Inc., are defendants, it was ordered, adjudged and decreed that certain mortgaged premises, with the appurtenances, in the bill of complaint in said cause particularly set forth and described, that is to say: An undivided one-third interest in and to ALL and singular of a certain Island of Sedge Marsh, hereinafter particularly described, situate, lying and being in the Upper Township of Cape May, in the County of Cape May and State of New Jersey, lying beween the Upper, Main and Middle Thoroughfare that falls into Corson's Inlet."

By *mesne* intervening conveyances, whatever title the Higgons thereby obtained became vested in defendants Gallagher, and whatever title remained in Southern Gardens, Inc. became vested in plaintiff herein.

The defendants now, in effect, contend that even though it be admitted, for the sake of argument, that the court's

conclusions initially arrived at, *i. e.*, that at the time of the conveyance from Higgons to Connolly the former had no title or interest in the lands, and that Ocean City Association had title at that time, was correct, that lack of title was cured by the subsequent conveyance from Ocean City Association to Kathryn M. Connolly prior to the foreclosure of the mortgage and the sale thereunder. They rationalize that the Higgons obtained under the conveyance from Forrest M. Rich, sheriff, not only the title to an undivided one-third interest in the lands which they had conveyed to Kathryn M. Connolly but also the title thereto which Ocean City Association had conveyed to Connolly after the date of their mortgage. They argue that one who mortgages lands as his own, upon suit thereon, shall not be permitted to derogate from his own mortgage by denying his title or by setting up title in any third person, and as a result the mortgagee obtains the benefit of any title acquired after the execution of a mortgage.

Plaintiff does not generally dispute this theory but alleges that it is inapplicable to the present facts where the encumbrance was a purchase money mortgage.

There are two bases upon which courts have bottomed this principle.

First: Under the common law, a grantor who has conveyed by a deed containing a warranty of title will not be suffered afterwards to acquire and assert an adverse title. This follows upon the theory of estoppel, to avoid circuity of action. This is also true of a mortgage. *Beach Realty Co. v. City of Wildwood,* 105 *N. J. L.* 317 (*E. & A.* 1929); *Armour Realty Co. v. Carboy,* 124 *N. J. L.* 205 (*Sup. Ct.* 1940); *Hamill v. Inventors' Manufacturing Co.,* 55 *N. J. Eq.* 649 (*Ch.* 1897).

Second: Contrary to the common law rule which permits a grantor who has conveyed by a deed without covenants of title to assert as against his grantee an adverse title subsequently acquired by him, the law never suffers a mortgagor to set up title of a third person against his mortgage. This is predicated upon an equitable estoppel

based upon a legal fraud which would otherwise be permitted if one who mortgaged lands as his own upon suit thereupon brought against him should be permitted to derogate from his own mortgage by denying his title or by said title put in any third person. See *Den ex dem Wyckoff v. Gardner,* 20 *N. J. L.* 556 (*Sup. Ct.* 1846); *Morris v. Glaser,* 106 *N. J. Eq.* 570 (*Ch.* 1929); *Tully v. Taylor,* 84 *N. J. Eq.* 459 (*E. & A.* 1915).

In both instances the grantee or mortgagee obtains the benefit of the title subsequently acquired by the grantor or mortgagor.

We have here a warranty of title in both the conveyance from Higgons and the purchase money mortgage contemporaneously executed by Connolly.

██ The conveyance from Higgons to Connolly contains a general warranty, which warranty is tantamount to a covenant of quiet enjoyment. *Camden Co. Welfare Bd. v. Federal Dep. Ins. Co.,* 1 *N. J. Super.* 523 (*Ch. Div.* 1948). The mortgage contains a covenant of quiet enjoyment after default.

In this situation, although the grantor did not convey good title, he seeks by way of the mortgagor's covenant, upon a foreclosure, to obtain better title than he had conveyed. It is a fair presumption that in giving the mortgage containing such a covenant the mortgagor relied upon the representations of the grantor's covenant of title.

██ When the reason for the rule is extinguished the rule itself dies. Under ordinary circumstances it should not lie in the power of a mortgagor to dispute the very warranties of title made by him, through the instrumentality of asserting an adverse title. This reasoning is not here applicable. The mortgagee was as well the grantor and the mortgagor gave back to him only such title as he had received as security for the payment of the purchase price thereof. By this claim, the mortgagee is, in effect, admitting his inadequacy of title and breach of his warranty. There is no sound reason in law or in equity which should permit a purchase money mortgagee to take advantage of his own dereliction, to his

advantage, where by his act he has forced the mortgagor to confirm the imperfect title, by the acquisition of an antagonistic perfect title. He would thereby, in effect, not be retaining title to that which he warranted he was conveying and obtaining as security, but rather something different from what he had conveyed and of far greater value. The mortgagee would be profiting by his own misrepresentation. A purchase money mortgage conveys only such interest as the mortgagor obtained and the mortgagee is restricted to a lien on such interest as security for the payment of the purchase price thereof.

In *Florida Land Investment Co. v. Williams*, 84 *Fla.* 157, 92 *So.* 876, 877, 26 *A. L. R.* 171 (*Fla. Sup. Ct.* 1922), the court said as follows:

"It would be manifestly unjust to hold that one selling and conveying property which he does not own may, by taking from his grantee contemporaneously with the conveyance to him a purchase-money mortgage, containing the usual covenants of warranty, for a part of the agreed consideration and afterwards, by foreclosing such purchase-money mortgage, acquire title to and ownership of the property, the purchaser in the meantime having in order to protect himself, acquired title to the property by purchase from the owner, the original grantor having refused to purchase such outstanding paramount title."

See also *Shreve v. Harvey*, 74 *N. J. Eq.* 336 (*Ch.* 1908); *Smith v. DeRussy*, 29 *N. J. Eq.* 407 (*Ch.* 1878); 4 *Tiffany, Law of Real Property* (3*d* ed.), sec. 1233.

It is, therefore, here held that even though a deed and the purchase money mortgage arising out of a simultaneous transaction contain covenants of title, the mortgagee is not entitled to the benefit of a lien on an after acquired title but is restricted to the title he conveyed as security for the payment of the purchase price. It follows that on this theory defendants obtained only such title as Higgons had on the conveyance to Connolly. This title has heretofore been held a nullity.

Defendants cannot succeed even on the theory of estoppel, since there is absent any fraud on the part of the mortgagor. The mortgagee cannot be said to have relied

upon the purchase money mortgagee's covenant of title, since he obtained exactly what he had conveyed to the mortgagee. He cannot be said to have relied upon the mortgagee's representation when, as far as can be concluded, the reverse was the fact. It would be inequitable to permit the mortgagee to take advantage of his own breach of the warranty.

Judgment will be entered for plaintiff consistent with the foregoing.