516 S.E.2d 48

**Gary MORGAN, Plaintiff Below, Appellant,**

v.

**CITY OF WHEELING and the Police Department of the City of Wheeling, Defendants Below, Appellees.**

**No. 25420.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 16, 1999.

Decided June 4, 1999.

John F. Dascoli, Esq., Andrew J. Katz, Esq., The Segal Law Firm, Charleston, West Virginia, Attorneys for the Appellant.

Ronald M. Musser, Esq., Rosemary J. Humway–Warmuth, Esq., City of Wheeling, Wheeling, West Virginia, Attorneys for the Appellees.

MAYNARD, Justice:

This declaratory judgment action is before this Court upon an appeal from a final order of the Circuit Court of Ohio County entered on April 30, 1998. In that order, the circuit court entered declaratory judgment in favor of the appellees, the City of Wheeling and the Police Department of the City of Wheeling, declaring that W.Va.Code § 8–5–11 (1969) permits municipalities to establish residency requirements for municipal employees, so that Wheeling City Ordinance 9046 which requires all personnel employed by the City of Wheeling to reside in either the City of Wheeling or Ohio County is valid. Specifically, the circuit court's order rejected a challenge to the Wheeling ordinance by the appellant, Gary Morgan, who is employed by the City of Wheeling as a police officer.

This Court has before it the petition for appeal, all matters of record, and the briefs and arguments of counsel. For the reasons that follow, we find that Wheeling City Ordinance 9046 is valid. Accordingly, we affirm.

## I.

### FACTS

The relevant facts of this case are simple and undisputed. The appellant, Gary Morgan, is employed by the City of Wheeling, West Virginia, as a police officer. During his employment, the appellant has maintained his residency in Wheeling.

Wheeling City Ordinance 9046 [1] (hereafter "Ordinance 9046") requires all of the city's employees, including police officers, to be residents of either Wheeling or Ohio County.[2] Specifically, the ordinance provides:

(a) All personnel hereafter employed by the City, whether hourly or salaried, whether full-time or part-time, and whether appointed in the classified civil service or the unclassified positions of the City, must be bona-fide residents of the City or Ohio County except at the time of appointment or employment when they need not be residents of the City or Ohio County, but shall establish residence in the City or Ohio County within six months.

(b) All officers and employees of the City hereafter to be employed by the City are hereby required as a condition of their continued employment to have their place of abode in the City or Ohio County and to be bona-fide residents therein, except as otherwise provided by this section. A "bona-fide resident", for the purpose of this section, means a person having a permanent domicile within the City or Ohio County and one which has not been adopted with the intention of again taking up or claiming a previous residence acquired outside of the City or Ohio County limits. The use of a post office box or nonpersonal residence for mailing purposes shall not be considered a bona-fide residence.

(c) All employees or officers now holding positions in the City service not residing within the City or Ohio County shall, if

---

1. Wheeling City Ordinance 9046 is found in the city's administrative code at section 149.17 titled "Residency Requirements." The ordinance was passed February 3, 1987.

2. Wheeling is located on the western and southern border of Ohio County.

they change their primary place of residence or domicile, establish and maintain their primary place of residence and domicile within the City or Ohio County at all times thereafter during their continued service with the City.

(d) Failure of any officer or employee or appointee in the classified civil service or the unclassified positions of the City to comply with the provisions of this section shall be cause for that employee's removal or discharge from the City service.

By letter dated August 28, 1996, the appellant informed the City of Wheeling of his desire to move to the State of Ohio.[3] The appellant requested the position of the city regarding whether Ordinance 9046 prevented such a move. Wheeling's assistant city solicitor replied that Ordinance 9046 requires all employees to be residents of the city or Ohio County within six months of their employment. The assistant city solicitor further informed the appellant that he would be discharged if he took residence in the State of Ohio.

Consequently, the appellant filed a complaint for declaratory judgment in the Circuit Court of Ohio County in which he challenged the validity of Ordinance 9046 on several grounds. By order of April 30, 1998, the circuit court granted the motion for summary judgment of the appellees, the City of Wheeling and the Police Department of the City of Wheeling. The appellant now appeals to this Court.

## II.

### STANDARD OF REVIEW

In *Cox v. Amick*, 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995), this Court stated:

3. Wheeling is located on the banks of the Ohio River which provides the western boundary between West Virginia and the State of Ohio.

4. This Court has explained:
    A municipal corporation is a creature of the State, and can only perform such functions of government as may have been conferred by the Constitution, or delegated to it by the law-making authority of the State. It has no inherent powers, and only such implied powers as are necessary to carry into effect those expressly granted.
Syllabus Point 1, *Brackman's Inc., v. City of Huntington*, 126 W.Va. 21, 27 S.E.2d 71 (1943).

because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo;* however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard.

*See also, Stull v. Firemen's Pension & Relief Fund,* 202 W.Va. 440, 504 S.E.2d 903 (1998). With this standard in mind, we now consider the issues before us.

## III.

### DISCUSSION

■ The first issue is whether Ordinance 9046 violates W.Va.Code §§ 8–14–6 through 8–14–24. Ordinance 9046 was enacted under the authority of W.Va.Code § 8–5–11 (1969)[4], which provides:

Subject to the provisions of the Constitution of this State, the provisions of this article, and other applicable provisions of this chapter, any city may by charter provision, and the governing body of any municipality, consistent with the provisions of its charter, if any, may by ordinance, determine and prescribe the officers or positions which are to be filled by election, appointment or employment, the number, method of selection, tenure, qualifications, residency requirements, powers and duties of municipal officers and employees, and the method of filling any vacancies which may occur.

There is no question that W.Va.Code § 8–5–11 expressly authorizes cities to govern the

We reaffirmed this in *Miller v. City of Morgantown,* 158 W.Va. 104, 109, 208 S.E.2d 780, 783 (1974) where we stated that "[a] municipal corporation possesses only the power and authority given to it by the legislature." *See also,* Syllabus Point 2, *Hyre v. Brown,* 102 W.Va. 505, 135 S.E. 656 (1926) ("A municipal corporation possesses and can exercise only the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable." (Citation omitted.)).

selection of city officers and employees in general which includes the power to enact residency requirements. The power delegated to cities by W.Va.Code § 8–5–11 is not plenary, however. W.Va.Code § 8–5–11 also provides that this power is subject to, *inter alia*, "other applicable provisions of this chapter."

Other applicable provisions include the police civil service act found in W.Va.Code §§ 8–14–6 through 8–14–24.[5] According to W.Va.Code § 8–14–6 (1969), in part:

> All appointments and promotions to all positions in all paid police departments of Class I and Class II cities[6] shall be made only according to qualifications and fitness to be ascertained by examinations, which, so far as practicable, shall be competitive, as hereinafter provided. No individual except the chief of police shall be appointed, promoted, reinstated, removed, discharged, suspended or reduced in rank or pay as a paid member of any paid police department, regardless of rank or position, of any Class I or Class II city in any manner or by any means other than those prescribed in the following sections of this article. (Footnote added.)

This Court has stated that the legislative intent of the police civil service act is "to provide for a complete and all-inclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers (except the chief of police), policemen and other employees of paid police departments" in Class I and Class II municipalities. Syllabus Point 5, in part, *Dougherty v. City of Parkersburg*, 138 W.Va. 1, 76 S.E.2d 594 (1952). Further, an underlying purpose of the act "is to give security to members of paid police departments of [Class I and Class II] municipalities." Syllabus Point 4, in part, *id.* In furtherance of this purpose, the act creates a "policemen's civil service commission" to make rules and regulations providing for competitive examinations for appointments and promotions to all positions in city police departments. W.Va.Code § 8–14–11 (1981).

The crux of the appellant's argument is that the police civil service act prevents a city from prescribing a residency requirement applicable to police officers because the provisions of the act governing selection requirements for police officers are exclusive. In support of this contention, the appellant first looks to the language of *Dougherty, supra*, that the act is "complete and all-inclusive." He also points to the language of W.Va.Code § 8–14–6, quoted above, that the selection of police officers shall be made "only" according to the provisions of the act, as well as the language of W.Va.Code § 8–14–23 that the provisions of the act are "complete and exclusive."

The appellant next cites the case of *Bays v. Police Civil Service Com'n*, 178 W.Va. 756, 364 S.E.2d 547 (1987). In *Bays*, this Court was asked to determine the validity of a regulation of the Police Civil Service Commission for the City of Charleston that no applicants whose scores were within the lowest 10 percent of those taking an examination would be eligible for promotion. Those applicants who scored in the lowest 10 percent on the examination challenged the regulation as violative of W.Va.Code § 8–14–17 which requires promotions to be based not only upon a consideration of the results of a written examination but also upon the applicant's previous service and experience. We framed the specific issue as whether the regulation of the Police Civil Service Commission of the City of Charleston conflicted with the police civil service act so as to be invalid. Finding that the regulation was in conflict with the police civil service act, we explained:

> *W.Va.Code*, 8–14–17 [1969, 1986] expressly requires promotions to be based upon merit and fitness as shown by *three* factors: (1) competitive written examination, (2) service *and* (3) experience. The statute gives no hint that any one of these factors

---

5. W.Va.Code §§ 8–14–6—24 comprise Part V of article 14 which is titled "Civil Service For Certain Police Departments." These code sections are commonly referred to collectively as the police civil service act.

6. According to W.Va.Code § 8–1–3(1) and (2), "[e]very municipal corporation with a population in excess of fifty thousand shall be a Class I city." Further, "[e]very municipal corporation with a population in excess of ten thousand but not in excess of fifty thousand shall be a Class II city."

may be converted into a "screening" device, which is utilized to disqualify an applicant for promotion from further evaluation in the promotional process.

*Bays*, 178 W.Va. at 762, 364 S.E.2d at 553–554. We concluded in Syllabus Point 2:

> The Police Civil Service Act, in particular, *W.Va.Code*, 8–14–17, as amended, requires that the promotions of individuals thereunder are to be based upon merit and fitness to be ascertained by competitive written examination and upon the superior qualifications of the individuals promoted, as shown by their previous service and experience. One of these test factors, in itself, is not an adequate determinant of the applicant's merit and fitness; therefore, it should not be considered to the exclusion of others. Accordingly, regulations of a police civil service commission which conflict with the statute on this point are void.

The appellant argues that the circumstances in *Bays* are very similar to those in the instant case. He opines that, like the City of Charleston regulation in *Bays*, Ordinance 9046 improperly alters the exclusive eligibility requirements, prescribed by the police civil service act, for the selection of police officers.

Third, the appellant cites the residency requirement in W.Va.Code § 8–14–12 as further proof that the exclusive authority to enact residency requirements for police officers rests in the police civil service act. According to W.Va.Code § 8–14–12 (1972), in part:

> Any applicant for original appointment must have been a resident for one year, during some period of time prior to the date of his application, of the city in which he seeks to become a member of the paid police department: Provided, That if the commission deems it necessary it may consider for original appointment or for reinstatement under the preceding proviso of this section, applicants who are not residents of the city but who have been residents of the county in which the city or any portion of the territory thereof is located for a period of at least one year.

As noted by the appellant, we found this requirement to be unconstitutional in *Spradling v. Hutchinson*, 162 W.Va. 768, 253 S.E.2d 371 (1979), where we concluded in Syllabus Point 2, "there is no rational basis for the restriction it imposes upon the fundamental constitutional right to travel, nor is there any compelling state interest for the requirement." According to the appellant, the fact that the police civil service act originally contained a residency requirement means that the residency of police officers is clearly a subject within the exclusive jurisdiction of the act. Also of importance, contends the appellant, is the fact that the Legislature has not added a residency requirement to the police civil service act in the almost twenty years since *Spradling* was decided. The appellant concludes from this that any municipal ordinance which purports to have a residency requirement applicable to police officers violates the police civil service act.

Finally, the appellant warns that if this Court were to hold that Ordinance 9046 is a proper exercise of municipal power pursuant to W.Va.Code § 8–5–11, the police civil service act would be eviscerated. The appellant explains that W.Va.Code § 8–5–11, in addition to providing for residency requirements, authorizes municipalities to prescribe, *inter alia*, the method of selection and qualifications of municipal employees, as well as the method of filling vacancies in municipal employment. Therefore, concludes the appellant, this Court's validation of Ordinance 9046 would allow municipalities to legislate at will in areas intended by the Legislature for the exclusive control of the police civil service act.

We disagree with the appellant that the provisions of the police civil service act exclude all other selection requirements for police officers. At first glance, the language quoted by the appellant from decisions of this Court and the act itself appears to support the appellant's position. Closer scrutiny reveals, however, that this is not so. This fact is best understood by looking at the purpose of the police civil service act. The design of the act is to set forth a system for the appointment, promotion, reduction, removal and reinstatement of police officers which

best ensures that these decisions are made according to the comparative merit and fitness of police officers and not according to personal or political whim. This design has the dual result of protecting the job security of those police officers who are best qualified while also guaranteeing that the public is served by police officers of the highest merit. Accordingly, this Court's characterization of the act as complete and all-inclusive means that the act prescribes the sole provisions for appointing police officers *according to merit and fitness*. In this regard, the act stands alone. It provides all that is necessary for the appointment and promotion of the fittest applicants.

The purpose of Ordinance 9046 is completely different from that of the police civil service act. Ordinance 9046 has nothing to do with ensuring the personal merit and fitness of police officers. That is, it is not grounded on the proposition that an applicant who resides in the City of Wheeling or Ohio County is more fit to be a city police officer than an applicant who does not. Rather, it is intended to ensure that police officers and their families spend the police officer's income, which is derived from municipal taxes, in the city businesses in which these taxes are generated. Another purpose of Ordinance 9046 is to encourage police officers to have a first hand knowledge of, an active commitment to and involvement in the everyday life of the city in which they serve. Because of this difference in purpose, Ordinance 9046 in no way violates the language of the police civil service act.

■ As noted above, the language of W.Va.Code § 8–5–11 expressly provides that the authority of municipal corporations to enact residency requirements for municipal officers and employees is subject to the police civil service act. Accordingly, a municipal corporation is not authorized to enact selection requirements for municipal police officers that are contrary to the express provisions of the police civil service act. This is the meaning of our decision in *Bays* where we held that the act expressly requires promotions to be based upon merit and fitness as shown by *three* factors so that a city is not authorized to ascertain fitness by one factor

alone. It is likewise the import of the language in W.Va.Code § 8–14–6 and W.Va. Code § 8–14–23 which states that the police civil service act provides the "only" and "exclusive" methods for the selection of police officers based on merit and fitness. Finally, it is in accord with W.Va.Code § 8–14–23 which expressly repeals any other civil service measures affecting police officers which are "inconsistent" with the act's provisions "insofar as such inconsistencies shall exist."

The proper question, therefore, is whether Ordinance 9046 is inconsistent with any provisions of the police civil service act. We find that it is not. The act contains no valid residency requirements for municipal police officers. Even if the durational residency requirement in W.Va.Code § 8–14–12 were still in effect, it would not be inconsistent with Ordinance 9046 because of the differences in the two provisions. The provision in W.Va.Code § 8–14–12 required applicants to be residents of the city for one year *prior* to the date of application. Ordinance 9046, in contrast, requires that city police officers currently reside in the city or county.

Finally, we do not share the appellant's concern that our decision here will eviscerate the police civil service act. The appellant is correct in noting that W.Va.Code § 8–5–11 does much more than authorize municipal corporations to enact residency requirements for city employees. It also empowers municipal corporations to, by ordinance, "determine and prescribe the officers or positions which are to be filled by election, appointment or employment, the number, method of selection, tenure, qualifications ... powers and duties of municipal officers and employees, and the method of filling any vacancies which may occur." Again, however, a city's power to legislate is subject to the provisions of the police civil service act. The methods of selection, tenure, and qualifications of police officers as well as the method of filling any vacancies which occur in the police department are completely provided for in the act so that cities are not authorized to legislate in these areas. Therefore, the appellant's fear that the powers granted to cities in W.Va.Code § 8–5–11 will nullify the police civil service act is baseless.

■ Accordingly, we hold that W.Va. Code § 8–5–11 (1969) provides express authorization to municipal corporations, subject to the provisions of the Constitution of this State, the provisions of article 14, chapter 8 of the West Virginia Code, and other applicable provisions of Chapter 8, to, by ordinance, prescribe residency requirements for municipal officers and employees including municipal police officers. Further, the provisions of the police civil service act, W.Va.Code §§ 8–14–6—24, which provide for the appointment, promotion, reduction, removal and reinstatement of all municipal police officers and other employees of paid police departments of Class I and Class II municipal corporations, are not exclusive. Therefore, a residency requirement applicable to municipal police officers which is enacted by a municipal corporation pursuant to W.Va.Code § 8–5–11 (1969) is valid. The police civil service act, rather, excludes the enactment of only those measures which are inconsistent with its express provisions. Accordingly, our answer to the first issue is that Ordinance 9046 does not violate the police civil service act.

■ Having found that Ordinance 9046 does not violate any provisions of the police civil service act, we now turn to the second issue which is whether Ordinance 9046 is unconstitutional as applied to the appellant. This is an issue of first impression in this Court. As noted above, this Court found the residency requirement in W.Va.Code § 8–14–12 unconstitutional in *Spradling, supra.* In *Spradling,* however, we contrasted a requirement of prior residency of a given duration, such as the one in W.Va.Code § 8–14–12, with a requirement that a person be a resident *at the time* of his application or shortly thereafter, such as the one in the instant case. We quoted in *Spradling* the United States Supreme Court in *McCarthy v. Philadelphia Civil Service Commission,* 424 U.S.

645, 96 S.Ct. 1154, 47 L.Ed.2d 366 (1976) in which it stated:

> We have previously differentiated between a requirement of continuing residency and a requirement of prior residency of a given duration. Thus in *Shapiro, supra,* 394 U.S. at 636, 89 S.Ct. [1322] at 1332 [22 L.Ed.2d 600], we stated: "The residence requirement and the one-year waiting-period requirement are distinct and independent prerequisites."

*Spradling,* 162 W.Va. at 773, 253 S.E.2d at 374. Therefore, our holding in *Spradling* concerning a one-year waiting period requirement is not applicable to the continuing residency requirement at issue here.

In challenging this residency requirement, the appellant sets forth several arguments for our consideration. First, the appellant contends that the continuing residency requirement found in Ordinance 9046 violates the Wheeling police officers' right of equal protection under W.Va. Const. art. III, § 10 and U.S. Const. amend. 14[7] by treating domiciliary and nondomiciliary police officers differently. In support of this contention, the appellant states that Ordinance 9046 is unconstitutional because there is no rational basis for permitting officers to live throughout Ohio County, as many as fifteen miles outside Wheeling, while prohibiting employees from living a half mile from Wheeling across the Ohio River. The appellant distinguishes *McCarthy v. Philadelphia Civil Service Com'n, supra,* and other cases cited by the appellees in support of Ordinance 9046 by explaining that these cases concern requirements that city employees live within *the city,* not the county, and, thus, are reasonably related to the purposes for which the ordinances were enacted. The appellant cites *Lewis v. City of Kinston,* 127 N.C.App. 150, 488 S.E.2d 274 (1997) in which the Court of Appeals struck down the same type of residency requirement as the one at issue.

---

**7.** W.Va. Const. art. III, § 10 states that "[n]o person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

U.S. Const. amend. 14 states:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the

State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

Second, the appellant argues that Ordinance 9046 interferes with his fundamental right to travel. Further, he urges this court to determine the constitutional validity of the ordinance by strictly scrutinizing it under the compelling state interest test as the Supreme Court of New Hampshire did in analyzing similar residency requirements in *Donnelly v. City of Manchester*, 111 N.H. 50, 274 A.2d 789 (1971) and *Angwin v. City of Manchester*, 118 N.H. 336, 386 A.2d 1272 (1978).

Finally, the appellant claims that Ordinance 9046 violates the Privileges and Immunities Clause of the federal constitution.[8] According to the appellant, the rights to travel and work in a given state and to pursue a given occupation are privileges protected by the constitution. *Citing O'Reilly v. Board of Appeals of Montgomery County, Md.*, 942 F.2d 281 (4th Cir.1991). The appellant concedes that a state resident generally cannot challenge a statute under the Privileges and Immunities Clause, but his argument appears to be that because he desires to move to Ohio and is challenging the ordinance which prevents this, he has raised a sufficient legal interest under the Uniform Declaratory Judgment Act.[9]

We are able to dispose of most of the appellant's arguments relatively quickly. First, we find no merit to the appellant's contention that the fundamental right to travel is affected by the residency requirement at issue. In *Spradling*, 162 W.Va. at 774, 253 S.E.2d at 375, we stated that "to uphold statutory residency requirements for

firemen and policemen, [most] courts have found that they do not penalize the fundamental right to travel." (Footnote omitted), *citing Andre v. Board of Trustees of Village of Maywood*, 561 F.2d 48 (7th Cir.1977), [*cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978) ]; *Wright v. City of Jackson, Mississippi*, 506 F.2d 900 (5th Cir.1975); *Miller v. Krawczyk*, 414 F.Supp. 998 (E.D.Wis.1976); *Ector v. City of Torrance*, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433 (1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1451, 39 L.Ed.2d 493 (1974); *Detroit Police Officers Association v. City of Detroit*, 385 Mich. 519, 190 N.W.2d 97 (1971), appeal dismissed for lack of substantial federal question, 405 U.S. 950, 92 S.Ct. 1173, 31 L.Ed.2d 227 (1972); *Hattiesburg Firefighters Local 184 v. City of Hattiesburg*, 263 So.2d 767 (Miss.1972); *Abrahams v. Civil Service Commission*, 65 N.J. 61, 319 A.2d 483 (1974); *Jackson v. Firemen's and Policemen's Civil Service Commission of Galveston*, Tex.Civ. App., 466 S.W.2d 412 (1971); *Salt Lake City Fire Fighters Local 1645 v. Salt Lake City*, 22 Utah 2d 115, 449 P.2d 239 (1969), [*cert. denied*, 395 U.S. 906, 89 S.Ct. 1748, 23 L.Ed.2d 220 (1969) ]. *See also, City & County of Denver v. Industrial Com'n*, 666 P.2d 160 (Colo.App.1983); *Tiffany v. City of Payette*, 121 Idaho 396, 825 P.2d 493 (1992); *Lewis v. City of Kinston*, 127 N.C.App. 150, 488 S.E.2d 274 (1997); *Trainor v. City of Newark*, 145 N.J.Super. 466, 368 A.2d 381 (1976), *certification denied*, 74 N.J. 255, 377 A.2d 661 (1977) and *opinion supplemented by* 148

---

8. U.S. Const. art. IV, § 2, cl. 1 states that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

9. The appellant's complaint below was a complaint for declaratory judgment in which he sought to ascertain his rights or status under Ordinance 9046 *if* he moved to the State of Ohio. The Uniform Declaratory Judgments Act is found in W.Va.Code §§ 55–13–1 to 16. Specifically, W.Va.Code § 55–13–2 (1941) states that "[a]ny person ... whose rights, status or other legal relations are affected by a ... municipal ordinance ... may have determined any question of ... validity arising under the ... ordinance ... and obtain a declaration of rights, status or other legal relations thereunder." In *Trail v. Hawley*, 163 W.Va. 626, 627–628, 259 S.E.2d 423, 425 (1979), this Court explained:

While the Uniform Declaratory Judgments Act, *W.Va.Code*, 55–13–1 et seq. [1941] does not *expressly* require a justiciable controversy as a condition precedent to its application, we have held that the issue to be determined must be potentially justiciable at some future time when the things sought to be avoided by the declaratory judgment action will have occurred. *Robertson v. Hatcher*, 148 W.Va. 239, 135 S.E.2d 675 (1964). Simply stated, for the purposes of a declaratory judgment action, a justiciable controversy exists when a legal right is claimed by one party and denied by another. Here, of course, the appellant properly sought below to determine his rights under Ordinance 9046 prior to his relocation to the State of Ohio and possible subsequent termination.

N.J.Super. 434, 372 A.2d 1132 (1977); and *Police Ass'n of New Orleans v. New Orleans*, 649 So.2d 951 (La.1995); *Contra, Fraternal Order of Police, etc. v. Hunter*, 49 Ohio App.2d 185, 360 N.E.2d 708 (1975), *cert. denied, Hunter v. Fraternal Order of Police, Youngstown Lodge No. 28*, 424 U.S. 977, 96 S.Ct. 1484, 47 L.Ed.2d 748 (1976). We conclude, therefore, that the fundamental right to travel is not affected by the residency requirement at issue.

■■■ In addition, the appellant's argument based on the Privileges and Immunities Clause is without merit. "Application of the Privileges and Immunities Clause to a particular instance of discrimination against out-of-state residents entails a two-step inquiry. As an initial matter, the court must decide whether the ordinance burdens one of those privileges and immunities protected by the Clause." *United Bldg. & Const. v. Mayor & Council of Camden*, 465 U.S. 208, 218, 104 S.Ct. 1020, 1027, 79 L.Ed.2d 249, 258 (1984) (citation omitted). In the instant case, a privilege and immunity is not burdened by Ordinance 9046 because the appellant has no fundamental right under the Privileges and Immunities Clause to be employed as a Wheeling police officer. *See McCarthy v. Philadelphia Civil Serv. Comm'n, supra; Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520, 524 (1976) ("This Court's decisions give no support to the proposition that a right of governmental employment per se is fundamental." (Citations omitted.)); *United Bldg. & Const. v. Mayor & Council of Camden*, 465 U.S. at 219, 104 S.Ct. at 1028, 79 L.Ed.2d at 259 ("Public employment . . . is qualitatively different from employment in the private sector; it is a subspecies of the broader opportunity to pursue a common calling. We have held that there is no fundamental right to government employment for purposes of the Equal Protection Clause." (Citations omitted.)); and *Winkler v. Spinnato*, 72 N.Y.2d 402, 406, 530 N.E.2d 835, 837, 534 N.Y.S.2d 128, 129 (1988), *cert. denied*, 490 U.S. 1005, 109 S.Ct. 1640, 104 L.Ed.2d 155 (1989) ("Plaintiffs have no 'fundamental right', within the purview of the Privileges and Immunities Clause, to be employed as

New York City firefighters[.]" (Citations omitted.)).

■■■ This leaves the appellant's equal protection argument. This Court has previously made clear that under the equal protection clause, if the challenged classification does not affect a fundamental right or some suspect or quasi-suspect criterion, the governmental classification will be sustained so long as it "is rationally related to a legitimate state interest." *Appalachian Power Co. v. Tax Dept.*, 195 W.Va. 573, 594, 466 S.E.2d 424, 445 (1995) (citation omitted). As noted above, Ordinance 9046 does not affect a fundamental right. Concerning suspect or quasi-suspect criteria, these categories include race, national origin, alienage, gender and illegitimacy, none of which are present here. *See Appalachian Power Co., supra.* Accordingly, we will analyze the challenged ordinance under the rational basis test.

The appellant acknowledges that many courts in other jurisdictions have upheld ordinances requiring municipal employees to reside in the city in which they work. *See Trainor, supra; Police Ass'n of New Orleans, supra; Fraternal Order of Police, supra; City & County of Denver, supra; Tiffany, supra; Mandelkern v. City of Buffalo*, 64 A.D.2d 279, 409 N.Y.S.2d 881 (1978); *De Franks v. City of Buffalo*, 248 A.D.2d 992, 670 N.Y.S.2d 282 (1998); and *Detroit Police Officers Ass'n, supra.* He also acknowledges the Supreme Court case of *McCarthy v. Philadelphia Civil Serv. Comm'n, supra*, which upheld a Philadelphia municipal regulation requiring city employees to be residents of the city. The holding in *McCarthy* would completely dispose of the case before us, and our analysis would now be at an end, were it not for a slight twist in the instant case readily called to our attention by the appellant. Whereas the ordinance in *McCarthy* and the ordinances in the other cases cited to us by the appellees concern residency requirements which mandate that city employees reside in the *city* in which they work, the ordinance at issue requires Wheeling police officers to reside in either the city of Wheeling *or Ohio County*, in which Wheeling is located. The appellant contends, therefore, that this somewhat less restrictive resi-

dency requirement, which includes residents of Ohio County but excludes those who are residents of Marshall County or the State of Ohio, is not reasonably related to any legitimate purpose. As noted above, in support of his argument the appellant cites the case of *Lewis v. City of Kinston,* 127 N.C.App. 150, 488 S.E.2d 274 (1997) in which the same kind of residency requirement as the one now before us was struck down by the Court of Appeals of North Carolina.

In *Lewis,* a City of Kinston police officer challenged a City of Kinston ordinance requiring city employees to live within Lenoir County, the county in which Kinston is located. The City's manager testified as follows:

> [T]he purposes for enacting the residency ordinance were to ensure that city employees contribute to the city's tax base, vote in city elections, and participate in the city's community. In addition, defendant City asserted in its answer that its emergency personnel should "live where it is possible for them to have quick access to their jobs in the event of civil unrest, catastrophe or natural disaster."

*Lewis,* 127 N.C.App. at 153, 488 S.E.2d at 276. The Court found that the City's residency requirement did not bear a rational relationship to those purposes. The Court explained:

> Kinston's ordinance and the administrative policy promulgated pursuant thereto require city employees to reside, not within the City of Kinston, but rather within Lenoir County, eliminating three of the four purposes for which defendant City ostensibly enacted the residency ordinance. If an employee resides in Lenoir County, but not in the City of Kinston, he can neither vote in municipal elections, nor contribute to the city's tax base. Also, an employee who lives in a neighboring county, nearby the city of Kinston, may be just as apt to participate in the community life of Kinston as an employee who lives outside the city but still within Lenoir County.

Moreover, the residency ordinance does not bear a rational relationship to the legit-

imate governmental purpose of ensuring rapid emergency assistance.... Plaintiff states in his affidavit that his present address in Duplin County, is approximately fourteen miles and twenty-five minutes from the Kinston city limits. He also stated that his Duplin County residence is nearer to Kinston, and accessible by better highways, than some locations within Lenoir County[.]

*Lewis,* 127 N.C.App. at 154, 488 S.E.2d at 276–277.[10] The appellant cites several of the same factors in support of his position as those mentioned by the Court in *Lewis, i.e.,* that a person living just across the county line in Marshall County or just across the bridge in the State of Ohio has better response time and is as likely to shop in Wheeling as a person who lives ten miles away in Ohio County.

We do not find the reasoning of the *Lewis* Court applicable to the facts of this case. First, two of the purposes given by the City of Kinston for enacting its residency requirement, ensuring that city employees contribute to the city's tax base and vote in city elections, were clearly without merit. That is not the case here. In *Spradling, supra,* we listed several of the bases often asserted as justification for municipal residency requirements:

> [P]romotion of ethnic balance in the community; reduction in high unemployment rates of inner-city minority groups; improvement of relations between such groups and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries.

*Spradling,* 162 W.Va. at 774–775, 253 S.E.2d 371, 375 (citation omitted). We also listed

---

**10.** The Court also found the ordinance improper because it vested unlimited discretion in the City manager.

the particular reasons recognized for residency requirements for police officers:

> [R]esidents would be more likely to be immediately familiar with the community. Knowledge of the local geography would allow quicker response, and knowledge of the people could lead to a greater interest and more conscientious effort in the performance of duty ... the likelihood that members of the community would be better acquainted with its police officers and, hence, more likely to trust and cooperate with them ... the importance of having police present in the community during off-duty hours to facilitate individual response to matters requiring police intervention as well as to facilitate emergency mobilization.

*Spradling,* 162 W.Va. at 775, 253 S.E.2d at 375.

The appellees, in their brief and argument before this Court, stated several of the above reasons as justification for Ordinance 9046. Specifically they stated that the City of Wheeling and Ohio County comprise one large community due to the fact that Wheeling is the county seat and largest urban area within Ohio County and because of governmental duties shared by both the city and county. The purposes of the residency requirement, therefore, are to encourage the constant presence of a trained police force within the community it serves; to enhance the effectiveness of police officers by ensuring that they are familiar with and feel a part of the community; and to bring about the general economic benefits to the city which result when police officers spend their salaries locally. There is no question that all of the above are legitimate government interests. We further believe that the residency requirement at issue is rationally related to these purposes.

Those who reside in Ohio County are more likely to reside, if not within the city limits of Wheeling, at least within the surrounding metropolitan area. By limiting police officers' permissible places of residence to those in Ohio County, the appellants have guaranteed that police officers will live within a certain distance of their place of work. This guarantee would not be present if officers were permitted to live in the State of Ohio or Marshall County. While the appellant apparently desires to live right across the Ohio River within a mile or two of the city, others may desire to live in an Ohio community a significant distance from Wheeling. The same is true of those officers who may choose to live in Marshall County. The appellants have also increased the chances that police officers will transact at least some personal business in Wheeling by virtue of the fact that Wheeling is the seat of Ohio County. We believe this also means that police officers are more likely to feel a greater personal stake in the well-being of Wheeling and its surrounding area. This is in contrast to those officers who would live in the State of Ohio or Marshall County whose children would attend schools in those areas and not in Wheeling or Ohio County and whose spouses would more likely work in the State of Ohio or Marshall County. Finally, officers who live in Ohio County will more likely spend some of their income in Wheeling while those who live in the State of Ohio or Marshall County may be more likely to shop, dine and seek entertainment elsewhere. When all of the above is added up, it means that the residency requirement at issue creates a greater possibility that City of Wheeling police officers will be more familiar with and feel a greater personal stake in the community in which they work; will be a constant presence in the community; and will spend more of their income in Wheeling. Therefore, we find that the residency requirement at issue is rationally related to the legitimate government purposes for which it was enacted.

There is no doubt that the residency requirement here is not perfectly designed to achieve its purposes. It is also undisputed that the City of Wheeling could have crafted a more restrictive requirement better suited to its purposes. These considerations, however, are not relevant to the constitutional inquiry called for in this case.

> If a classification has some "reasonable basis," it does not offend the Constitution simply because it is not made with mathematical nicety or because in practice it results in some inequality. *Lindsley* [*v.*

*Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, '55 L.Ed. 369 (1911)], *supra.* "The problems of government are practical ones and may justify, if they do not require, rough accommodations—illogical, it may be, and unscientific." *Metropolis Theatre Co. v. City of Chicago*, 228 U.S. 61, 69–70, 33 S.Ct. 441, 443, 57 L.Ed. 730, 734 (1913). If any state of facts reasonably may be conceived to justify it, a statutory discrimination will not be set aside. *MacGowan [McGowan] v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961).

*Trainor v. City of Newark*, 145 N.J.Super. 466, 472, 368 A.2d 381, 384 (1976). After careful consideration, we are simply unable to conclude that the residency requirement before us is *irrational* . Accordingly, we find that City of Wheeling Ordinance 9046, enacted pursuant to W.Va.Code § 8–5–11 (1969), which requires all city employees, including police officers, to be residents of either the City of Wheeling or Ohio County, in which Wheeling is located, does not penalize the fundamental right to travel; does not burden the privileges and immunities protected by the Privileges and Immunities Clause, U.S. Const. art IV, § 2, cl. 1; and does not violate the right of equal protection under the Fourteenth Amendment of the Constitution of the United States and Article III, Section 10 of the Constitution of West Virginia if the residency requirement is reasonably related to a legitimate government interest.

## IV.

### CONCLUSION

For the reasons stated above, we affirm the order of the circuit court.

Affirmed.