671 S.E.2d 666

**Jason EASTHAM, Plaintiff Below, Appellee**

v.

**THE CITY OF HUNTINGTON, A Municipal Corporation, and David Felinton, Mayor for the City of Huntington, Defendants Below, Appellants.**

No. 33807.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 3, 2008.

Decided Sept. 30, 2008.

Concurring Opinion of Justice Benjamin Jan. 9, 2009.

Scott E. McClure, Esq., Huntington, for the City of Huntington.

Bert Ketchum, Esq., Paul T. Farrell, Jr., Esq., Greene, Ketchum, Bailey, Walker, Farrell & Tweel, Huntington, for Jason Eastham.

Greg L. Howard, Jr., Esq., Bailey & Howard, Barboursville, for Josh Coffey.

PER CURIAM.[1]

This declaratory judgment action is before the Court upon an appeal by the City of Huntington from a final order of the Circuit Court of Cabell County entered on January 22, 2007. In that order, the circuit court ruled on behalf of Appellee Jason Eastham, a City of Huntington firefighter, and Appellee Josh Coffey, a City of Huntington police officer, declaring that the City of Huntington's residency requirement is void and unenforceable because it violates the constitutional and statutory rights of the City's civil service employees. For the reasons that follow, we find that the City of Huntington's residency requirement is valid, and we reverse the ruling of the circuit court.

# I.

## FACTS

The City Charter of the City of Huntington provides that any person employed or appointed shall be a resident of the City of Huntington within ninety days from their employment or appointment and shall remain a resident of the City of Huntington during their respective tenure in office.[2] This residency requirement was modified by the Circuit Court of Cabell County by orders dated September 29, 1994, and November 4, 1994. In its September 29, 1994, order, the circuit court ruled that "the City of Huntington is hereby enjoined and restrained from attempting to enforce any residency requirement ... until such time as the City of Huntington is in a position to strictly enforce, without any exception, such requirement."

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

2. According to Section 14.3 of the Huntington City Charter:

Any person employed or appointed under this Charter shall be a resident of the City of Huntington at the time they are employed or appointed or shall become a resident of the City of Huntington within ninety days from their employment or appointment and shall remain a resident of the City of Huntington during their respective tenure in office or period of employment; provided, however, nothing in this section shall be construed to apply to any employee or officer of the City who, on the effective date of this Charter, shall have resided outside said City on February 1, 1985. There shall be no exception or waiver of the requirements contained in this section and any violation of any requirement contained herein shall result in termination of employment or appointment and a vacancy in the respective office or position. The Mayor shall be charged with enforcement of this section. (Ord.5-8-89) CLERK'S NOTE: The residency requirement provided for in this section was modified by Orders of the Circuit Court of Cabell County, West Virginia entered on September 29, 1994 and November 4, 1994 in the case of *Steven Ellis, et al. v. The City of Huntington, et al.—Circuit Court of Cabell County, West Virginia—Civil Action No. 93-C-2443 (1994).* The Court's Orders supersede and take precedence over the provisions of this section and should be read and applied *in lieu* thereof. Copies of the Court's Orders are on file in the Office of the City Clerk and available for inspection and copying during regular business hours Monday through Friday.

By subsequent ordinance, the City of Huntington provided that all personnel of the City employed or appointed after July 1, 2002, were required to become bonafide residents of the City of Huntington. The ordinance also provides that "[f]ailure of any officer, employee or appointee in the classified civil service or the unclassified positions of the City of Huntington to comply with the provisions of this section *shall* result in the immediate discharge from the City service." [3] Thereafter, the City's mayor, David Felinton, issued a declaration that all civil service employees who failed to show proof of residence on or before December 15, 2006, "shall be dismissed immediately for cause."

On December 13, 2006, the appellees, Jason Eastham, a City of Huntington firefighter, and Josh Coffey, a City of Huntington police officer, filed separate declaratory judgment actions requesting the Circuit Court of Cabell County to declare the rights, status and legal relations of City employees arising out of the residency requirement. Mr. Eastham subsequently filed a motion for summary judgment requesting the court to find as a matter of law that the Huntington residency requirement conflicted with the constitutional and statutory protections provided to civil service employees. The circuit court thereafter consolidated the declaratory judgment actions brought by Mr. Eastham and Mr. Coffey.

By order entered on January 22, 2007, the circuit court ruled that the residency requirement is void and unenforceable because, by requiring immediate dismissal for those who fail to provide proof of residency, it does not afford permanent civil service employees due process provided by Article III, Section 10 of the State Constitution and the protections provided by the applicable civil service statutes.[4] The City of Huntington now appeals.

## II.

## STANDARD OF REVIEW

 This Court has held that "A circuit court's entry of a declaratory judgment is reviewed *de novo.*" Syllabus Point 3, *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995). "[H]owever, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard." *Cox,* 195 W.Va. at 612, 466 S.E.2d at 463. We now proceed to review the circuit court's order according to these standards.

## III.

## DISCUSSION

The sole issue before this Court is whether the provision in the City of Huntington's residency requirement that mandates "immediate discharge" for employees who fail to provide sufficient proof of residency violates the due process protections afforded civil service employees.

 We begin our discussion with the general rule that municipalities in West Virginia may enact residency requirements governing their employees.[5] According to W.Va. Code § 8–5–11 (1969), in pertinent part,

\* \* \*

(d) Failure of any officer, employee or appointee in the classified civil service or the unclassified positions of the City of Huntington to comply with the provisions of this section *shall* result in immediate discharge from the City service.

---

3. Article 202 of the Codified Ordinances of the City of Huntington, provides, in part at 202.10:

(a) All personnel employed or appointed to the City of Huntington by the Council or the Mayor after July 1, 2002, whether hourly or salaried, whether full-time or part-time, and whether appointed in the classified civil service or the unclassified positions of the City, must be bona-fide residents of the City of Huntington, Cabell and Wayne Counties, West Virginia, except at the time of appointment or employment when they need not be residents of the City of Huntington, Cabell and Wayne Counties, West Virginia, but shall establish residence in the City of Huntington, Cabell and Wayne Counties, West Virginia, within ninety (90) days of being appointed or employed by the City.

4. The civil service statutes for police officers are found at W.Va.Code § 8–14–6 through § 8–14–24. Firefighters' civil service statutes are found at W.Va.Code § 8–15–11 through § 8–15–27.

5. Courts have found that residency requirements serve several salutary purposes. For example, such ordinances promote,

ethnic balance in the community; reduction in high unemployment rates of inner-city minori-

Subject to the provisions of the constitution of this State, the provisions of this article, and other applicable provisions of this chapter, any city may by charter provision, and the governing body of any municipality, consistent with the provisions of its charter, if any, may by ordinance, determine and prescribe the ... residency requirements ... of municipal officers and employees[.]

In the fairly recent case of *Morgan v. City of Wheeling*, 205 W.Va. 34, 516 S.E.2d 48 (1999), this Court upheld the validity of the City of Wheeling's residency requirement against several constitutional challenges. In the syllabus points of *City of Wheeling*, we held as follows:

1. W.Va.Code § 8–5–11 (1969) provides express authorization to municipal corporations, subject to the provisions of the Constitution of West Virginia, the provisions of article 14, chapter 8 of the West Virginia Code, and other applicable provisions of chapter 8, to, by ordinance, prescribe residency requirements for municipal officers and employees including municipal police officers.

2. The provisions of the police civil service act, W.Va.Code §§ 8–14–6–24, which provide for the appointment, promotion, reduction, removal and reinstatement of all municipal police officers and other employees of paid police departments of Class I and Class II municipal corporations, are not exclusive. Therefore, a residency requirement applicable to municipal police officers which is enacted by a municipal corporation pursuant to W.Va.Code § 8–5–

11 (1969) is valid. The police civil service act, rather, excludes the enactment of only those measures which are inconsistent with the express provisions of the act.

3. A city ordinance, enacted pursuant to W.Va.Code § 8–5–11 (1969), which requires all city employees, including police officers, to be residents of either the city or county does not penalize the fundamental right to travel; does not burden the privileges and immunities protected by the Privileges and Immunities Clause, U.S. Const. art. IV, § 2, cl. 1; and does not violate the right of equal protection under the Fourteenth Amendment of the Constitution of the United States and Article III, Section 10 of the Constitution of West Virginia if the residency requirement is reasonably related to a legitimate government interest.

Therefore, our law clearly recognizes the general validity of residency requirements.

 Significantly, as set forth above, residency requirements are subject to the State constitution and civil service protections and are invalid to the extent that they are inconsistent with these laws. Civil service officers in our State enjoy certain constitutional and statutory protections. This Court has held that "[p]rinciples of due process ... dictate that a police officer subject to civil service protection must be afforded a pre-disciplinary proceeding prior to discharge, suspension, or reduction in rank or pay ... unless exigent circumstances preclude such a pre-disciplinary hearing." Syllabus, in part, *City of Huntington v. Black*, 187 W.Va. 675,

ty groups; improvement of relations between such groups and city employees; enhancement of the quality of employee performance by greater personal knowledge of the city's conditions and by a feeling of greater personal stake in the city's progress; diminution of absenteeism and tardiness among municipal personnel; ready availability of trained manpower in emergency situations; and the general economic benefits flowing from local expenditure of employees' salaries. *Spradling v. Hutchinson*, 162 W.Va. 768, 774–775, 253 S.E.2d 371, 375 (1979), *quoting Ector v. City of Torrance*, 10 Cal.3d 129, 109 Cal.Rptr. 849, 514 P.2d 433, 436 (1973). We have also enumerated several reasons for residency requirements for police officers:

[R]esidents would be more likely to be immediately familiar with the community. Knowledge of the local geography would allow quicker response, and knowledge of the people could lead to a greater interest and more conscientious effort in the performance of duty ... the likelihood that members of the community would be better acquainted with its police officers and, hence, more likely to trust and cooperate with them ... the importance of having police present in the community during off-duty hours to facilitate individual response to matters requiring police intervention as well as to facilitate emergency mobilization. *Spradling*, 162 W.Va. at 775, 253 S.E.2d at 375, *quoting Town of Milton v. Civil Service Commission*, 365 Mass. 368, 312 N.E.2d 188, 193–194 (1974).

421 S.E.2d 58 (1992), *modified on other grounds by Alden v. Harpers Ferry Police Civil Serv.*, 209 W.Va. 83, 543 S.E.2d 364 (2001).[6] We have also held:

> W.Va.Code § 8–14A–3(b) (1997) (Repl. Vol.1998)[7] requires that, before a civil service officer may be disciplined through discharge, suspension, or reduction in rank or pay, he/she must be afforded a predisciplinary hearing before a hearing board unless there exist exigent circumstances that require the recommended disciplinary action to precede such hearing. (Footnote added.).

Syllabus Point 4, in part, *Alden, supra.* Accordingly, absent exigent circumstances, a civil service officer may not be discharged absent a pre-disciplinary hearing.

■ The appellees do not contest the general validity of residency requirements. Rather, the appellees argue that by specifically requiring the "immediate discharge" of those civil service officers who fail to prove residency by a certain date, the City of Huntington's residency requirement conflicts with the constitution and civil service statutes by providing for discharge without a pre-disciplinary hearing. The City of Huntington responds that its residency requirement should be read as preserving the right to a pre-disciplinary hearing. In other words, opines the City, its residency requirement should be construed to mandate a pre-disciplinary hearing prior to the dismissal of any civil service employee in accord with the constitutional and statutory laws of this State. We agree with the City.

■ This Court looks to several principles of construction when determining the constitutionality of a legislative statute or municipal ordinance. First, "[t]he rules for construing statutes also apply to the interpretation of municipal ordinances." Syllabus Point 1, in part, *Town of Burnsville v. Kwik–Pik, Inc.*, 185 W.Va. 696, 408 S.E.2d 646 (1991). This Court also has held that "[w]hen the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syllabus Point 3, *Willis v. O'Brien*, 151 W.Va. 628, 153 S.E.2d 178 (1967). In addition, "[i]n considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syllabus Point 1, in part, *State ex rel. Appalachian Power Co. v. Gainer*, 149 W.Va. 740, 143 S.E.2d 351 (1965). Finally, "[w]here there are two permissible constructions of an ordinance, one rendering it valid and the other invalid, the former should be preferred." Syllabus Point 1, *Huntington v. Water Corp.*, 119 W.Va. 420, 194 S.E. 617 (1937).

Applying these rules to the residency ordinance at issue, we believe that it is reasonable to construe the ordinance as preserving the pre-disciplinary hearing guaranteed by our laws. Although the ordinance provides for "immediate discharge," it contains no language that expressly or unambiguously precludes a pre-disciplinary hearing for those employees who fail to prove residency. Absent such language, this Court will not pre-

---

**6.** We explained in *Major v. DeFrench*, 169 W.Va. 241, 251, 286 S.E.2d 688, 694–695 (1982):

> The United States and West Virginia Constitutions guarantee that no person shall be deprived of life, liberty or property without due process of law. W.Va. Const. art. 3 § 10; U.S. Const. amend. XIV. It is fundamental to say that due process guarantees freedom from arbitrary treatment by the state. Thus whenever government action infringes upon a person's interest in life, liberty or property, due process requires the government to act within the bounds of procedures that are designed to insure that the government action is fair and based on reasonable standards. (Citation omitted.).

**7.** W.Va.Code § 8–14A–3(b) (1997) provides:

> When a civil service accused officer faces a recommended punitive action of discharge, suspension or reduction in rank or pay, but before such punitive action is taken, a hearing board must be appointed and must afford the accused civil service officer a hearing conducted pursuant to the provisions of article fourteen, section twenty [§ 8–14–20], or article fifteen, section twenty-five [§ 8–15–25] of this chapter: Provided, That the punitive action may be taken before the hearing board conducts the hearing if exigent circumstances exist which require it.

sume that Huntington's City Council intended to abrogate constitutional and statutory law when it enacted the residency requirement. In other words, we find nothing in the provisions of the ordinance that negates the City's power to enact the ordinance beyond a reasonable doubt. Thus, we adopt a construction that upholds the validity of the ordinance. We therefore find that the City of Huntington's residency requirement provides for the discharge of a civil service employee for violation of the requirement only after the employee receives a pre-disciplinary hearing fully in accord with constitutional and statutory protections.

### III.

### CONCLUSION

For the above-stated reasons, we conclude that the City of Huntington's residency requirement ordinance is valid. Therefore, we reverse the January 22, 2007, order of the Circuit Court of Cabell County that found the ordinance to be void and unenforceable, and we remand to the circuit court for proceedings consistent with this opinion.

Reversed and remanded.

BENJAMIN, Justice, concurring.

(Filed Jan. 9, 2009)

In view of the current statutory law of this state, and the absence of a sufficiently convincing constitutional argument to the contrary, the majority did not err in reaching the conclusion that the City of Huntington's residency requirement ordinance is valid. However, I believe that this case presents an opportunity for the Legislature to give consideration to whether such arcane residency requirements as is in place in Huntington continue to be appropriate in a modern era. I question whether, from a policy standpoint, such requirements continue to be defensible.

Justice is defined by a court's measured application of the rule of law. It should not be the ambition of judges to elevate their own personal policy preferences over the rule of law. When judges advance their own notions of what they believe the law should be rather than what the law is, such judges engage in a judicial activism which is disre-

spectful to our constitutional system of governance and which is ultimately destructive to public confidence in the judiciary. A judge's positive disregard of the rule of law, no matter the excuse, reveals an arrogance unbefitting of this Court. Such behavior has no place in a judicial system which values precedent, stability, predictability and certainty.

Although I personally favor the freedom of the City of Huntington's workers to live where they choose to live, I must acknowledge that my personal policy preference is not supported by the law applicable to this case. I therefore concur with the conclusion of the majority. I observe, however, that residency requirements may pose the potential for municipal liability when used as a political weapon to retaliate against municipal police and firefighter groups.