525 S.E.2d 658

**Roy COLLINS, et al., Plaintiffs Below, Appellants,**

v.

**CITY OF BRIDGEPORT, Defendant Below, Appellee.**

**No. 25626.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 22, 1999.

Decided Dec. 6, 1999.

---

John F. Dascoli, Esq., Andrew J. Katz, Esq., The Segal Law Firm, Charleston, West Virginia, Attorneys for the Appellants.

Norman T. Farley, Esq., West & Jones, Clarksburg, West Virginia, Attorney for the Appellee.

WILKES, Acting Justice:[1]

This is an appeal by a group of police officers of the City of Bridgeport from a final order of the Circuit Court of Harrison County, entered on June 23, 1998. In that order, the circuit court affirmed the decision of the Bridgeport Civil Service Commission that merit pay increases are not illegal promotions in violation of the police civil service act, W.Va.Code §§ 8-14-6 to 8-14-24.[2] The circuit court also entered declaratory judgment in favor of the City of Bridgeport, declaring that, *inter alia*, the long-held practice of including holiday compensation time in the calculation of overtime pay did not rise to the level of a contractual obligation that could not be unilaterally modified by the city, and the implementation of a citywide pay scale did not violate the appellants' previously established contractual rights. Finally, the appellants challenge the amount of attorney fees awarded to them after prevailing on two issues in the circuit court. For the following reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this decision.

## I.

## FACTS

The appellants are a group of police officers employed by the City of Bridgeport (hereinafter "the city" or "Bridgeport"). On March 15, 1996, the appellants filed a complaint with the Bridgeport Civil Service Commission (hereinafter "the commission") in which they alleged that pay increases granted to individual police officers on the basis of merit constitute a violation of the police civil service act, W.Va.Code §§ 8-14-6 to 8-14-24. After a hearing before the commission on July 30, 1996, the commission ruled that the merit pay increases do not violate the police civil service act.[3]

The appellants appealed this ruling to the Circuit Court of Harrison County. The appellants combined with this appeal a declaratory judgment action in which they raised several additional issues. Specifically, the appellants challenged the following actions by the city: (1) the compensation of police officers who drive to police training seminars but not those who travel as passengers; (2) the modification of the long-held practice of including officers' holiday compensation in the calculation of their overtime pay; (3) the institution of a personnel policy limiting officers to four weeks of annual vacation; (4) the promulgation of new discipline and termination policies; and (5) the implementation of a new citywide pay scale.

In its order of June 23, 1998, the circuit court granted partial summary judgment to the appellants, finding that the city's practice of compensating those officers who drive to training seminars but not those who travel as passengers is violative of the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 201-261. The circuit court also found that the city's reduction of maximum annual vacation time to four weeks violated

---

1. The Honorable Christopher C. Wilkes is Judge of the 23rd Judicial Circuit.

2. W.Va.Code, §§ 8-14-6 to 8-14-24 comprise Part V of article 14 which is titled "Civil Service For Certain Police Departments." These code sections are commonly referred to collectively as the police civil service act.

3. The July 30, 1996 letter decision of the Bridgeport Civil Service Commission states, in part:

The Bridgeport Civil Service Commission has considered the Complaint of the City Police Officers under 8.14.17 which provides that

the Commission shall have the power to determine in each instance whether an increase in salary constitutes a promotion. Further consideration was given to 5.04 of Regulations of the Bridgeport Civil Service Commission of the City of Bridgeport, West Virginia, which alludes to the same that the pay increase given police officers of the City of Bridgeport have not and do not constitute a promotion. The pay increases given to the Bridgeport police officers were given in recognition of performance of an officer for meeting or exceeding basic standards. The Commission finds that these pay increases were not given in lieu of promotions.

the Codified Ordinances of Bridgeport which state that all city employees, including police officers, are entitled to five weeks of vacation after completing twenty-five years of service.[4] Because the appellants prevailed on these two issues, the circuit court awarded them attorney fees in the amount of $175.00 and an award of costs in the amount of $115.00. On the remaining issues, the circuit court found for the City of Bridgeport.

The appellants now appeal to this Court the issues concerning merit pay, the modification of the long-held practice of including holiday compensation in the calculation of overtime pay, the implementation of a new citywide pay scale, and the amount awarded in attorney fees and costs.

## II.

## STANDARD OF REVIEW

■ Before discussing the issues before us, a few words concerning the appropriate standards of review are in order. As noted above, the merit pay issue was originally decided by a civil service commission. In Syllabus Point 1 of *Appeal of Prezkop,* 154 W.Va. 759, 179 S.E.2d 331 (1971), we held that "[a] final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law." In *In re Queen,* 196 W.Va. 442, 473 S.E.2d 483 (1996), we elaborated upon this standard of review in an appeal originating with a decision of the Correctional Officers' Civil Service Commission. There we explained that "our review of the circuit court's decision made in view of the Commission's action is generally *de novo.* Thus, we review the Commission's adjudicative decision from the same position as the circuit court." *In re Queen,* 196 W.Va. 442, 446, 473 S.E.2d 483, 487 (1996). We concluded in Syllabus Point 1,

An adjudicative decision of the Correctional Officers' Civil Service Commission should not be overturned by an appellate court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Review under this standard is narrow and the reviewing court looks to the Civil Service Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision.

Further,

An appellate court may reverse a decision of the Correctional Officers' Civil Service Commission as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

Syllabus Point 2, *In re Queen.* These standards of review are proper in the instant case.

■ Concerning this Court's review of those issues raised in the declaratory judgment action, we have stated,

Therefore, because the purpose of a declaratory judgment action is to resolve legal questions, a circuit court's ultimate resolution in a declaratory judgment action is reviewed *de novo;* however, any determinations of fact made by the circuit court in reaching its ultimate resolution are reviewed pursuant to a clearly erroneous standard.

*Cox v. Amick,* 195 W.Va. 608, 612, 466 S.E.2d 459, 463 (1995). With these standards in mind, we now consider the issues before us.

## III.

## DISCUSSION

### A. Issue 1: The Merit Pay Plan

■ The first issue is whether the merit pay plan complained of by the appellants

---

4. Concerning the discipline and termination issue, the circuit court ruled that any parts of the policy that conflict with civil service laws will be considered invalid in any actual disciplinary case. The court, however, denied the appellants' motion for summary judgment on the issue because there was currently no case or controversy involving an individual police officer who had been disciplined under the policies contrary to the civil service statute or the Police Officer's Bill of Rights.

violates the police civil service act. On January 1, 1989, the City of Bridgeport enacted what it called a "Merit Compensation Plan" to govern the compensation of employees of the city including the police officers involved in this case. The plan basically consisted of a twenty-two-step program of salary increases in which police officers could progress laterally from the entry level rate of pay to the maximum salary for his or her job classification. The plan established minimum standards required for merit advancement as well as provisions for additional merit increases.

Specifically, each new police officer was required to serve a probationary period of six months. Upon successful completion of this period, and with the recommendation of the officer's supervisor, the officer was upgraded to step one of the wage schedule. The officer was upgraded to step two after completion of the first year of employment. To be eligible for an annual increase between steps three and twenty-two of the wage schedule, the officer had to receive a satisfactory overall rating on his or her performance appraisal conducted by the officer's supervisor. The city manager then had final approval of the wage increase.[5] If the wage increase was approved by the city manager, the officer received a salary increase of one wage step above his or her current pay effective June 16 of each year. Also, an officer could receive an additional wage step increase upon recommendation of his or her supervisor and with the approval of the city manager.

Effective December 1, 1995, the City of Bridgeport instituted a new salary schedule for city employees based on longevity. This plan consists of a ten-step lateral scale of salary increases. Each employee is assigned a grade based on job description and placed on the scale according to current salary. Employees serving in steps one, two or three of any grade must serve twelve months in each step prior to attaining eligibility for advancement to the next step. Employees serving in steps four, five or six of any grade

are eligible for advancement to the next higher step after serving twenty-four months in the step from which advancement is anticipated. Employees serving in steps seven, eight or nine of any grade must serve thirty-six months in each step prior to attaining eligibility for advancement to the next step. Besides longevity, employees may also receive raises in pay through annual cost of living increases, promotions or job enhancement.

The Bridgeport Civil Service Commission upheld the legality of the merit pay plan in effect from 1989 to 1995 and found that pay increases "were given in recognition of performance of an officer for meeting or exceeding basic standards[ ]" and "were not given in lieu of promotions." The circuit court affirmed the commission's decision. Although the circuit court found that certain criteria used in determining merit were subjective, it concluded that no provision of the police civil service act prohibits the granting of merit pay raises based on subjective performance evaluations.

The appellant police officers now challenge the rulings of the commission and the circuit court. The appellants essentially argue that the award of merit pay based on subjective factors and left to the total discretion of the city manager amounts to a promotion in violation of the police civil service act which is designed to eliminate politics and favoritism from public employment. It is important to note, however, that the only alleged instance of specific injury as a result of the merit compensation plan is that of Sergeant Roy Collins, an appellant in this case, who was denied a merit pay increase by the city manager in 1994 despite the fact that he had been an officer for more than twenty years, met all the criteria for a pay raise, and had been recommended for a raise by the police chief.

The City of Bridgeport responds that the police civil service act gives the civil service commission discretionary power to determine

---

5. According to the Merit Compensation Plan as originally enacted, recommended wage step increases had to be approved by the city council. On March 6, 1993, the City of Bridgeport adopted a new city charter which empowered

the city council to employ a city manager who is responsible for all the administrative duties of city operations. The city manager establishes and administers personnel policies and procedures for the City of Bridgeport.

whether a salary increase is a promotion which it did here after considering all the evidence. Also, says the city, the merit pay plan complained of has been replaced with a new pay plan based on longevity. Finally, the city opines that even under the old merit plan, pay increases were available across the board without discrimination.

In addressing this issue, we first look to the express provisions of the police civil service act. W.Va.Code § 8–14–17 (1991) states that "[t]he [police civil service] commission shall have the power to determine in each instance whether an increase in salary constitutes a promotion." The act, however, is otherwise silent on the issue of selective salary increases granted to individual police officers. Accordingly, we look behind the silent face of the act to its legislative purpose.

 The purpose of the police civil service act is twofold. First, the act is designed "to give security to members of paid police departments of [Class I and Class II] municipalities ... against the vicissitudes of municipal elections." Syllabus Point 4, in part, *Dougherty v. City of Parkersburg*, 138 W.Va. 1, 76 S.E.2d 594 (1952). We have also said that the act is designed to guarantee that the public is served by police officers of the highest merit. *See Morgan v. City of Wheeling*, 205 W.Va. 34, 516 S.E.2d 48 (1999). To achieve these purposes, the legislature has provided in the act "for a complete and all-inclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers (except the chief of police), policemen and other employees of paid police departments" in Class I and Class II municipalities. Syllabus Point 5, in part, *Dougherty v. City of Parkersburg*, 138 W.Va. 1, 76 S.E.2d 594 (1952). The crux of this system is the adoption of standard criteria and procedures to ensure that employment decisions affecting police officers are based on their comparative merit and fitness. Conversely, employment decisions made arbitrarily or on the basis of political considerations are prohibited by the act. In the instant case, the record indicates that the city manager arbitrarily denied a merit pay increase to Sergeant Roy Collins even though Sergeant Collins met all of the criteria for the raise and

the raise was recommended by the police chief. We conclude, therefore, that the City of Bridgeport's denial of a merit pay increase to Sergeant Collins violated the police civil service act. Accordingly, we find that the Bridgeport Civil Service Commission abused its discretion, and the circuit court erred, in upholding the merit pay plan as applied to Sergeant Collins. Therefore, we reverse the circuit court on this issue.

The appellants request that we find as a matter of law that merit pay raises, such as the one at issue, violate the police civil service act. As noted previously, however, the appellants allege and the evidence in the record indicates that only Sergeant Collins experienced arbitrary conduct resulting from the operation of the merit pay plan. Accordingly, we do not find it necessary to reach the broader issue urged on us by the appellants. Because we find that Sergeant Collins was wrongly denied a merit pay increase, we remand this case for the recalculation of Sergeant Collins' current salary to reflect the merit pay increase he was arbitrarily denied.

### B. Issue 2: Alleged Violation of the Longevity–Based Pay Scale

 Closely related to the previous issue is the appellants' claim that the city violated the longevity-based pay scale enacted in December 1995 when it placed officers in the new scale according to the salary they earned under the old merit pay plan. At issue here is not the longevity-based pay scale but simply the placement of officers in this scale. The appellants aver that this placement perpetuates inequities that existed under the old plan. As proof of this, the appellants point to the circuit court's finding that some officers within the same rank are receiving less pay than others who have fewer years of service. The appellants ask us to order the recalculation of the salaries of all police department employees to reflect length of service. We decline to do so for a number of reasons.

First, as noted above, there are insufficient findings below that officers besides Sergeant Collins were disadvantaged due to the operation of the merit pay plan. Second, there are also insufficient findings that any alleged inequities in the current system are the sole

result of arbitrary conduct under the merit pay plan such as occurred in Sergeant Collins' case. Also, neither the appellants' brief nor the circuit court's order specifies those officers who are allegedly disadvantaged because of their placement in the new plan. In addition, any wholesale recalculation of police officers' salaries would most likely result in some officers experiencing a reduction in pay. Further, we note that the merit pay plan in effect from 1989 until 1995 was not challenged by the appellants until 1996 which was after the new pay plan became effective. This delay makes the crafting of a satisfactory remedy more difficult. Finally, we believe that any benefits that the recalculation of salaries would bestow upon the small number of police officers allegedly disadvantaged by their placement in the 1995 pay plan would be outweighed by the undue hardship of recalculating all of the police officers' salaries going back to at least December 1995. Accordingly, we affirm the circuit court on this issue and deny the appellants their requested relief.

### C. Issue 3: Legality of Alteration in Long-held Overtime Policy

■ The third issue for us to decide is whether the City of Bridgeport improperly altered its long-held policy regarding the calculation of overtime pay for police officers. According to the appellants, for more than twenty years the city included the officers' vacation pay, holiday compensation time and sick pay in the calculation of the officers' overtime pay. The city modified this policy in December 1994. Under the new policy, an officer is not paid at an overtime rate until the hours of overtime actually worked exceed the hours of compensation not worked.[6] The circuit court found that the longstanding past practice of the city does not rise to the level

of a contractual obligation that could not be modified by the city. We agree.

■ The appellants challenge the modification in the policy regarding the calculation of overtime pay on three grounds. First, the appellants assert that an employment contract by a government employer is protected by the contract clause of article III, section 4 of the West Virginia Constitution,[7] so that a government employer cannot alter employees' contractual rights without providing just compensation to the employees. This assertion can be dispensed with quickly. The appellants cite no cases, nor are we aware of any, in which the contract clause is held to be implicated when a government employer modifies an employment policy which was originally promulgated by the government employer at its own discretion. Rather, the contract clause prohibits the passage of a statute or law which impairs the obligation of an existing contract. *See Devon Corp. v. Miller,* 167 W.Va. 362, 280 S.E.2d 108 (1981), *cert. denied,* 455 U.S. 993, 102 S.Ct. 1622, 71 L.Ed.2d 855 (1982); and *Shell v. Metropolitan Life Ins. Co.,* 181 W.Va. 16, 380 S.E.2d 183 (1989). We simply do not believe a government employer's unilateral modification of a discretionary personnel policy constitutes the impairment of a contract under article III, section 4 of our Constitution.

■ Second, the appellants assert that Bridgeport's past practice of the calculation of overtime pay and the police officers' reliance on this practice create a contract between the city and its police officers that cannot be unilaterally modified by Bridgeport without the payment of just compensation to the police officers. The appellants cite *Adkins v. Inco Alloys Intern., Inc.,* 187 W.Va. 219, 417 S.E.2d 910 (1992) and *Booth*

6. Section 6.09 of the City Of Bridgeport Personnel Policies, effective December 1, 1994 states:

If an employee is required to work extra hours during a work period (or work week) in which he or she has used sick leave, vacation leave, or any other type of leave time (including holiday time off), the employee will be paid for the extra hours at the regular, straight-time rate of pay. However, if the extra hours worked are more than the number of leave time hours taken, the employee will be paid at one and one-half times the regular rate of pay for the

number of extra hours worked which where (sic) not offset by the leave time hours taken.

7. *W.Va. Const.,* art. III, § 4 states:

The privilege of the writ of habeas corpus shall not be suspended. No person shall be held to answer for treason, felony or other crime, not cognizable by a justice, unless on presentment or indictment of a grand jury. No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed.

*v. Sims,* 193 W.Va. 323, 456 S.E.2d 167 (1995) in support of this position. This Court has held that a substantial employment right may be established "either through an express promise by the employer or by implication from the employer's personnel manual, policies, or custom and practice[.]" Syllabus Point 3, in part, *Adkins, supra.* We have also said, however, that,

> [a]n employer may modify or revoke prior personnel manuals or policies that have created express or implied contract rights as to job security and establish in a subsequent personnel manual or policy that the employment is one at-will. When such a change is made, the employer must give reasonable notice of the change to the employees.

Syllabus Point 4, *Hogue v. Cecil I. Walker Machinery Co.,* 189 W.Va. 348, 431 S.E.2d 687 (1993). In the context of the present case, this means that the City of Bridgeport is permitted to revoke or alter its long-held policy concerning overtime pay provided it notifies its employees of the change. The appellants attempt to distinguish *Hogue* from the instant facts, stating first that *Hogue* is not controlling in the context of public employees. We disagree. In the instant case, the appellants have failed to cite a specific statute or regulation that mandates that Bridgeport treat holiday, vacation, or sick pay as time actually worked for the purpose of calculating overtime pay. In the absence of such a law, Bridgeport, like a private employer, is free to promulgate a policy and subsequently modify that policy as long as employees are given reasonable notice of the modification. Bridgeport gave reasonable notice by printing the new policy in its Personnel Policies Manual. The appellants also attempt to distinguish *Hogue* by stating that the contract in *Hogue* was based on promises in an employment handbook while in the case *sub judice* the contract is based on a long time past practice. We do not believe this distinction is significant. Finally, we find that *Booth v. Sims, supra,* is not controlling in this case inasmuch as *Booth* concerns pension benefits and not a change in a discretionary personnel policy.

Third, the appellants contend that the long-held past practice at issue is a property right which may not be taken by a government employer without due process. This Court has held that "[t]he Due Process Clause, Article III, Section 10 of the West Virginia Constitution, requires procedural safeguards against State action which affects a liberty or property interest." Syllabus Point 1, *Waite v. Civil Serv. Comm'n,* 161 W.Va. 154, 241 S.E.2d 164 (1977). However, "[a]lthough the Constitution protects property interests, it does not create them. To decide whether plaintiff had a property interest at stake, we look to see whether some independent source, such as federal, state, or local law, has created an enforceable expectation." *Hutchison v. City of Huntington,* 198 W.Va. 139, 154, 479 S.E.2d 649, 664 (1996) (footnote omitted). This Court has opined that "[a] 'property interest' includes not only the traditional notions of real and personal property, but also extends to those benefits to which an individual may be deemed to have a legitimate claim of entitlement under existing rules or understandings." Syllabus Point 3, *Waite.* We have further explained:

> To have a property interest, an individual must demonstrate more than an abstract need or desire for it. He must instead have a legitimate claim of entitlement to it under state or federal law. Additionally, the protected property interest is present only when the individual has a *reasonable* expectation of entitlement deriving from the independent source.

Syllabus Point 6, *State ex rel. Anstey v. Davis,* 203 W.Va. 538, 509 S.E.2d 579 (1998). Finally, property interests do not arise from policies promulgated solely at the discretion of government officials. *See* Syllabus Point 4, *State ex rel. Deputy Sheriff's Ass'n v. County Com'n,* 180 W.Va. 420, 376 S.E.2d 626 (1988) ("Because civil service coverage is an option subject to the discretion of the local county commission and, ultimately, the citizens of the county, the deputy sheriffs have only an expectation of entitlement, which is not sufficient to give rise to a property interest"); and *State ex rel. Anstey, supra.*

In this case, we are aware of no statute or local law which grants to Bridgeport police

officers a property interest in having time compensated but not actually worked included in the calculation of overtime pay. Rather, this method of calculating overtime pay was a personnel policy of Bridgeport which was practiced over a period of time at the city's discretion.[8] As noted above, a property interest does not normally arise from policies promulgated solely at the discretion of government officials. Also, while *Waite* and its progeny hold that unwritten policies concerning the right to uninterrupted employment may constitute property interests, we do not believe that the overtime compensation policy at issue rises to such a level. We find, therefore, that Bridgeport's modification of its long-held policy regarding the calculation of overtime pay of municipal police officers was permissible. Accordingly, the holding of the circuit court on this issue is affirmed. We now turn to the final issue before us.

### D. Issue 4: Attorney Fees and Costs

The last issue raised is whether the circuit court improperly awarded the appellants only $175.00 in attorney fees and $115.00 in costs. The appellants argue that they should receive $28,706.01 in attorney fees and costs because they prevailed below on their Fair Labor Standards Act and vacation pay claims. Further, the appellants aver that if this Court finds for them on any or all of their assignments of error, they should receive additional attorney fees and costs.

The City of Bridgeport counters that the appellants do not deserve additional fees and costs for prevailing on their FLSA claim because it was a minor count in the appellants' complaint. Also, the city argues that the appellants' claim for fees and costs fails under the police civil service act because the appellants did not prevail on that issue below. Third, according to the city, attorney fees generally are not available under the Uniform Declaratory Judgments Act. Finally, the City of Bridgeport contends that the appellants should bear their own attorney fees and costs because there is no evidence that the city acted in bad faith, vexatiously, wantonly or for oppressive reasons.

In reviewing the ruling of the circuit court with respect to attorney fees and costs, "the standard is whether such ruling by the trial court constitutes an abuse of discretion." *Hopkins v. Yarbrough*, 168 W.Va. 480, 489, 284 S.E.2d 907, 912 (1981) (citations omitted). Further, "the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees, and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that he has abused his discretion." Syllabus Point 4, in part, *Ball v. Wills*, 190 W.Va. 517, 438 S.E.2d 860 (1993) (citations omitted). We are unable to conclude that the circuit court abused its discretion in awarding only $175.00 in fees and $115.00 in costs in the FLSA and vacation pay claims. However, the circuit court denied attorney fees on the merit pay claim because the circuit court found for the City of Bridgeport. Because we find for the appellants on the issue of merit pay, we find that the appellants are entitled to additional attorney fees.

"As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement except when the losing party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Syllabus Point 9, *Helmick v. Potomac Edison Co.*, 185 W.Va. 269, 406 S.E.2d 700 (1991), *cert. denied*, 502 U.S. 908, 112 S.Ct. 301, 116 L.Ed.2d 244 (1991). It is clear from our review of the record that the City of Bridgeport has not acted in bad faith, vexatiously, wantonly or for oppressive reasons concerning the merit pay claim. However, W.Va.Code § 8–14–20 (1996) provides that a member of a paid police department subject to the police civil service act, W.Va. Code §§ 8–14–6 to 8–14–24, who is removed, discharged, suspended or reduced in rank or pay and subsequently reinstated or exonerated by the civil service commission, the circuit court or this Court shall, if represented by legal counsel, be awarded reasonable attor-

---

**8.** W.Va.Code § 8–5–12 (1981) provides the governing body of every municipality with the plena-

ry power to provide for the compensation of municipal officers and employees.

ney fees as approved by the commission, circuit court or this Court, and the fees shall be paid by the governing body. We believe this statute provides express authority for the award of attorney fees to the appellants for prevailing on their merit pay issue.

We have found that Sergeant Collins was wrongly denied merit pay in violation of the police civil service act, and we have ordered the recalculation of Sergeant Collins' current salary to reflect the merit pay increase he was wrongly denied. W.Va.Code § 8–14–20 authorizes the award of attorney fees to those police officers, such as Sergeant Collins, who are injured by violations of the police civil service act. Accordingly, we find that the appellants are entitled to costs and reasonable attorney fees. In the proceedings below and before this Court, the appellants requested an award of $28,706.01 in attorney fees and costs. Our review of the record reveals that this amount is reasonable. Because the appellants have prevailed in this Court on the issue of merit pay, we conclude that the appellants are entitled to an award of $28,706.01 in fees and costs.

## IV. CONCLUSION

In summary, we reverse the circuit court's decision and find that the City of Bridgeport improperly denied merit pay to Sergeant Collins, and we remand for the recalculation of Sergeant Collins' salary to reflect the merit pay increase he was wrongly denied. Second, we affirm the circuit court on the issue of the police officers' placement in the longevity-based pay schedule and decline to order the recalculation of all of the officers' salaries. Third, we find that Bridgeport's modification of its long-held policy regarding the calculation of overtime pay of police officers was permissible and affirm the circuit court on that issue. Finally, because the appellants prevailed in this Court on the issue of merit pay, we find that the appellants are entitled to attorney fees and costs of $28,706.01. Accordingly, the decision of the circuit court is affirmed in part, reversed in part, and remanded with directions.

Affirmed in part, reversed in part, and remanded with directions.

Chief Justice STARCHER and Justice DAVIS, deeming themselves disqualified, did not participate in the decision of this case.

Judges FRED RISOVICH, II and HERMAN G. CANADY, Jr., sitting by temporary assignment.

Justice SCOTT did not participate.