# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## JANUARY 2019 TERM

**FILED**

**April 30, 2019**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

_____

No. 17-0971

_____

**QUENTON BURNER AND ERIN GIBBONS,**
Petitioners Below, Petitioners

**V.**

**MARTINSBURG POLICE CIVIL SERVICE COMMISSION,**
Respondent Below, Respondent

_____

Appeal from the Circuit Court of Berkeley County
The Honorable Christopher C. Wilkes, Judge
Civil Action Nos. 17-AA-1 AND 17-AA-2

**AFFIRMED**
_____

Submitted: March 6, 2019
Filed: April 30, 2019

Christian K. Riddell
Stedman & Riddell, PLLC
Martinsburg, West Virginia
Attorney for Petitioners

Cy A. Hill
Allison M. Subacz
CIPRIANI & WERNER P.C.
Charleston, West Virginia
Attorneys for Respondent

**JUSTICE JENKINS delivered the Opinion of the Court.**

**JUSTICE ARMSTEAD, deeming himself disqualified, did not participate in the decision of this case.**

**JUDGE PAUL T. FARRELL, sitting by temporary assignment.**

**CHIEF JUSTICE WALKER** concurs and reserves the right to file a concurring opinion.

**SYLLABUS BY THE COURT**

1.      "The provisions of the police civil service act, W. Va. Code §§ 8-14-6-24, which provide for the appointment, promotion, reduction, removal and reinstatement of all municipal police officers and other employees of paid police departments of Class I and Class II municipal corporations, are not exclusive. . . .  The police civil service act, rather, excludes the enactment of only those measures which are inconsistent with the express provisions of the act."  Syllabus point 2, in part, *Morgan v. City of Wheeling*, 205 W. Va. 34, 516 S.E.2d 48 (1999).

2.      "'The judgment of a circuit court affirming a final order of a police civil service commission, upon appeal therefrom as provided by statute, will not be reversed by this Court unless the final order of the commission was against the clear preponderance of the evidence or was based upon a mistake of law.'  Syl. pt. 2, *In re Appeal of Prezkop*, 154 W. Va. 759, 179 S.E.2d 331 (1971)."  Syllabus point 3, *Bays v. Police Civil Service Commission of Charleston*, 178 W. Va. 756, 364 S.E.2d 547 (1987).

**Jenkins, Justice:**

Quenton Burner and Erin Gibbons (collectively "Petitioners") herein appeal from the October 3, 2017 order of the Circuit Court of Berkeley County denying Petitioners' appeal and petition for writ of mandamus, and affirming the final order issued by the Martinsburg Police Civil Service Commission ("Commission"). Petitioners challenge the circuit court's holding that the Commission's awarding points to a candidate on competitive examination for promotion based on education credentials did not violate the requirements of the Police Civil Service Act set forth in West Virginia Code §§ 8-14-6 to 8-14-24 (LexisNexis 2017). Having considered the briefs submitted on appeal, the appendix record, the parties' oral arguments, and the applicable legal authority, we find no error. Accordingly, we affirm the circuit court's final order.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

On December 10, 2016, Corporal Quenton Burner ("Cpl. Burner") and PFC Erin Gibbons ("PFC Gibbons"), both of the Martinsburg Police Department, sat for competitive examinations for promotions to Sergeant and Corporal, respectively. Under Rule VII, Section 2 of the Martinsburg Police Commission's Rules and Regulations,

> [a]pplicants for promotion shall be graded on a scale of a maximum of one-hundred (100) points. This shall consist of a maximum of fifty (50) points for the written examination, a maximum of forty (40) points for the personnel file review and a maximum of ten (10) points shall be based on seniority.

1

With regard to the Personnel File Review, the maximum forty (40) points available for review of the applicant's personnel file are given as follows:

a) <u>Efficiency Rating</u> – A maximum of ten (10) points shall be awarded for review of efficiency rating. The Chief of Police shall submit to the Commission an efficiency rating on each candidate scheduled to take the oral interview. Efficiency ratings may be based on the following: absenteeism, accident rating, character and conduct, attitude, personal appearance, ability to work under pressure and on dangerous assignments, ability to meet and deal with others, ability to organize work, knowledge of duties, laws, ordinances and rules applicable to his/her work, accuracy and attention to pertinent details, emotional stability, leadership and promoting high morale.

b) <u>Education</u> – A maximum of ten (10) points shall be awarded based on the following:
- 10 points – Post graduate degree from an accredited college or university
- 8 points – Bachelor's degree from an accredited college or university
- 6 points – 3 years college completed at an accredited institution
- 4 points – 2 years completed or associate degree from an accredited college or university
- 2 points – 1 year college completed at an accredited institution
- 1 point – post-secondary education

c) <u>Training</u> – A maximum of six (6) points shall be awarded for accredited law enforcement training of an official nature. No points under this section are to be awarded for activities which accrue points under the above education section.

d) <u>Commendations</u> – A maximum of four (4) points for outstanding performance beyond the call of duty evidenced by the Martinsburg City Council or other police orgovernment entity. A maximum of ten (10) points for special efforts as noted by superiors of rank of Sergeant and above.

e) <u>Suspensions and Reprimands</u> – The score may be reduced by a maximum of ten (10) points for a final suspension or

2

reprimand based upon due process which has occurred in the past five (5) years.

After the scores were tallied, Cpl. Burner received the third highest score among the candidates for the two open Sergeant positions, and PFC Gibbons received the second highest score among the candidates for the one open Corporal position. The candidate with the highest score on the Sergeant examination received eight education points for his bachelor's degree, and the candidate with the second highest score received ten education points for his master's degree. Cpl. Burner received two points for his education. PFC Gibbons received no education points, while the candidate who outscored him received eight (8) points for his bachelor's degree. Without the consideration of points for education, Cpl. Burner and PFC Gibbons would have both finished with sufficient scores for promotion.

After receiving their results, both Cpl. Burner and PFC Gibbons requested review of their scores and a public hearing with the Commission pursuant to West Virginia Code § 8-14-13a (LexisNexis 2017). On January 27, 2017, the Commission heard their arguments, through counsel, on the legality of awarding points[1] for education.[2] The

---

[1] In their brief, Petitioners refer to the points awarded for education as "additional points." As explained below, the small amount of points (10 points) set aside for education credentials is part of the 100-point total. Therefore, it is a mischaracterization to refer to the education points as "additional" or "bonus."

[2] It should be noted that neither Cpl. Burner nor PFC Gibbons contested any other aspect of the scoring or provision of the Commission's Rules and Regulations.

Commission issued its final order on February 1, 2017, and found "no basis to deviate from its established rule and modify its prior respective awards for educational efforts as a component of experience."

On February 15, 2017, Petitioners filed an administrative appeal challenging the decision of the Commission, and also petitioned the Circuit Court of Berkeley County for a writ of mandamus compelling the Commission to dispense with the awarding of points for education, and to promote Cpl. Burner and PFC Gibbons to the ranks of Sergeant and Corporal, respectively. Petitioners argued in their appeal, that under the Police Civil Service Act, promotions are to be based only on "experience," which they interpret to mean seniority, but not education. The Circuit Court of Berkeley County denied the Petitioners' appeal and petition for writ of mandamus, and affirmed the Final Order issued by the Commission. This appeal followed.

## II.

## STANDARD OF REVIEW

As noted above, the issue at hand was decided originally by the Martinsburg Police Civil Service Commission. In Syllabus point 1 of *Appeal of Prezkop*, 154 W. Va. 759, 179 S.E.2d 331 (1971), we held that "[a] final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law." This standard was elaborated

4

upon in *In re Queen:* "[O]ur review of the circuit court's decision made in view of the Commission's action is generally de novo. Thus, we review the Commission's adjudicative decision from the same position as the circuit court." *In re Queen*, 196 W. Va. 442, 446, 473 S.E.2d 483, 487 (1996). However, our "[r]eview under this standard is narrow" and we look to the

> Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 376-77, 109 S.Ct. 1851, 1860-61, 104 L.Ed.2d 377, 394 (1989). We may reverse the Commission's decision as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that is so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

*Id.* With this standard in mind, we now address the issue presented.

### III.

### DISCUSSION

Petitioners contend that the Circuit Court of Berkeley County erred when it found that the Commission's awarding of points on competitive examination for promotion to a candidate based on education credentials did not violate the requirements of the Police Civil Service Act. The Commission's Rule VII—which describes the allotment of points for promotions—was enacted under the authority of West Virginia Code § 8-5-11 (LexisNexis 2017), which provides:

5

Subject to the provisions of the Constitution of this State, the provisions of this article, and other applicable provisions of this chapter, any city may by charter provision, and the governing body of any municipality, consistent with the provisions of its charter, if any, may by ordinance, determine and prescribe the officers or positions which are to be filled by election, appointment or employment, the number, method of selection, tenure, qualifications, residency requirements, powers and duties of municipal officers and employees, and the method of filling any vacancies which may occur.

Further, this Court has noted:

There is no question that W. Va. Code § 8-5-11 expressly authorizes cities to govern the selection of city officers and employees in general which includes the power to enact residency requirements. The power delegated to cities by W. Va. Code § 8-5-11 is not plenary, however. W. Va. Code § 8-5-11 also provides that this power is subject to, *inter alia,* "other applicable provisions of this chapter."

*Morgan v. City of Wheeling*, 205 W. Va. 34, 38, 516 S.E.2d 48, 52 (1999).

In their brief, Petitioners argue that Rule VII of the Commission's Rules and Regulations violates the Police Civil Service Act, and that criteria for promotion should be expressly limited to the considerations listed in West Virginia Code § 8-14-17 (LexisNexis 2017). West Virginia Code § 8-14-17 provides, in full:

(a) Vacancies in positions in a paid police department of a Class I or Class II city shall be filled, so far as practicable, by promotions from among individuals holding positions in the next lower grade in the department.

6

(b) Promotions shall be based upon experience and by written competitive examinations to be provided by the Policemen's Civil Service Commission: Provided, That except for the chief or deputy chiefs of police, if the position of deputy chief of police has been previously created by the city council of that Class I or Class II city, no individual is eligible for promotion from the lower grade to the next higher grade until the individual has completed at least two years of continuous service in the next lower grade in the department immediately prior to the examination: Provided, however, That notwithstanding the provisions of section six of this article, any member of a paid police department of a Class I or Class II city now occupying the office of chief or deputy chief of police of that paid police department, or hereafter appointed to the office of chief or deputy chief of police, except as hereinafter provided in this section, is entitled to all of the rights and benefits of the civil service provisions of this article, except that he or she may be removed from the office of chief or deputy chief of police without cause, and the time spent by the member in the office of chief or deputy chief of police shall be added to the time served by the member during the entire time he or she was a member of that paid police department prior to his or her appointment as chief or deputy chief of police, and shall in all cases of removal, except for removal for good cause, retain the regular rank within that paid police department which he or she held at the time of his or her appointment to the office of chief or deputy chief of police or which he or she has attained during his or her term of service as chief or deputy chief of police.

(c) The provisions of this section apply and inure to the benefit of all individuals who have ever been subject to the provisions of this article. The commission may determine in each instance whether an increase in salary constitutes a promotion.

7

In support of this argument—that criteria for promotion should be expressly limited to the considerations listed in the statute—Petitioners cite to this Court's holding in *Dougherty v. City of Parkersburg*, 138 W. Va. 1, 76 S.E.2d 594 (1952): "It is the legislative intendment of the police civil service act . . . to provide for a complete and all-inclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers (except the chief of police), policemen and other employees of paid police departments." Syl. pt. 5, in part, *id.*

This Court, in *Collins v. City of Bridgeport*, 206 W. Va. 467, 525 S.E.2d 658 (1999), held that the purpose of the Police Civil Service Act is "to guarantee that the public is served by police officers of the highest merit." 206 W. Va. at 474, 525 S.E.2d at 665. "The crux of this system is the adoption of standard criteria and procedures to ensure that employment decisions affecting police officers are based on their comparative merit and fitness." *Id.* Ultimately, the core of Petitioners' argument is that the Police Civil Service Act prevents a municipality[3] from awarding points based on candidates' education credentials because the provisions of the act governing police promotions are exclusive.[4]

---

[3] Under West Virginia Code § 8-1-2 (LexisNexis 2017), "municipality" is defined as follows: "Municipality" is a word of art and shall mean and include any Class I, Class II and Class III city and any Class IV town or village, heretofore or hereafter incorporated as a municipal corporation under the laws of this State.

[4] Petitioners challenge only the consideration of higher education as a criterion for promotions. It is important to note that Petitioners do not challenge the Commission's other criterion under the umbrella of "experience" or any other factor used in the rubric for promotions.

8

Specifically, Petitioners rely heavily on *Bays v. Police Civil Service Commission of Charleston*, 178 W. Va. 756, 364 S.E.2d 547 (1987) to support their contention that the term "experience" means "seniority," and that it cannot be interpreted to encompass any other criteria.

In *Bays*, the Police Civil Service Commission ("PCSC") published notice of the vacancies in the City of Charleston's Police Department and stated that it would, "in its discretion, set the level of achievement necessary to qualify for promotion." *Bays*, 178 W. Va. at 757, 364 S.E.2d at 548. Two days before the competitive written examination, the PCSC "determined that it would apply a 90/10 percent pass rate. That is, the top ninety percent of those taking the examination would receive passing scores and the bottom ten percent would fail." *Id.* Once the examinations were graded, the bottom ten percent were eliminated from further consideration. Conversely, the top ninety percent continued in the promotion process and proceeded to medical examinations, performance appraisals, and other considerations. Those officers who scored in the bottom ten percent challenged the PCSC's regulation as violative of West Virginia Code § 8-14-17 which "requires promotions to be based not only upon a consideration of the results of a written examination but also upon the applicants' previous service and experience" 178 W. Va. at 758, 364 S.E.2d at 549.

The *Bays* Court found that the PCSC's "90/10" regulation violated West Virginia Code § 8-14-17 and held:

9

> The Police Civil Service Act, in particular, W. Va. Code, 8-14-17, as amended, requires that the promotions of individuals thereunder are to be based upon merit and fitness to be ascertained by competitive written examination and upon the superior qualifications of the individuals promoted, as shown by their previous service and experience. One of these test factors, in itself, is not an adequate determinant of the applicant's merit and fitness; therefore, *it should not be considered to the exclusion of others. Accordingly, regulations of a police civil service commission which conflict with the statute on this point are void*.

Syl. pt. 2, 178 W. Va. 756, 364 S.E.2d 547 (emphasis added).

Petitioners argue that the regulation in the case *sub judice* is analogous to the one in *Bays*. In particular, Petitioners contend that, just as the "90/10" regulation in *Bays*, awarding points for education exceeds the authority of a municipality and directly conflicts with the provisions of the Police Civil Service Act. Because the Legislature failed to define the term "experience" in the statute, Petitioners take the narrow view that "experience" means only "seniority" pursuant *Bays*. 178 W. Va. 756 at 760, 364 S.E.2d 547 at 551.

In challenging the Commission's consideration of education credentials as a component of "experience," Petitioners further contend that there is no rational basis or legal precedent in the State to support such an assertion. To support their argument, Petitioners once again rely on *Bays*. According to Petitioners, the definition of "experience" propounded by the Commission and the circuit court is in direct contradiction to the definition put forth in *Bays*. The *Bays* Court noted that the Police Civil Service Act

10

"requires promotions under the Police Civil Service Act to be based upon merit and fitness as shown by (1) competitive written examination, (2) service, i.e., performance appraisal and (3) experience, i.e., seniority." *Bays*, 178 W. Va. at 760, 364 S.E.2d at 551. Because of this, Petitioners go on to argue that the *Bays* Court's use of "i.e." is of particular importance because "i.e." means *that is* or *in other words*. On the contrary, "e.g." would imply *example given* or *for example*. Thus, in the opinion of Petitioners, the use of "i.e." signals that the Court unequivocally meant to state that "experience" *means* seniority, and nothing else. Because of this, Petitioners contend that any other interpretation of "experience" would be in direct contradiction with the Act, and without a proper basis.

We disagree. Instead, we agree with the position of the Commission, and its reliance on this Court's holding in the post-*Bays* case, *Morgan v. City of Wheeling*, 205 W. Va. 34, 516 S.E.2d 48 (1999). In *Morgan*, the appellant police officer sought review of a decision from the Circuit Court of Ohio County that declared West Virginia Code § 8-5-11 permitted municipalities to establish residency requirements for municipal employees. The *Morgan* Court determined that the residency requirement issue was related to the legitimate government purposes for which it was enacted.

> The provisions of the police civil service act, W. Va. Code §§ 8-14-6 [to] 24, which provide for the appointment, promotion, reduction, removal and reinstatement of all municipal police officers and other employees of paid police departments of Class I and Class II municipal corporations, *are not exclusive. . . . The police civil service act, rather, excludes the enactment of only those measures which are inconsistent with the express provisions of the act*.

11

Syl. pt. 2, in part, *Morgan*, 205 W. Va. 34, 516 S.E.2d 48 (emphasis added). The *Morgan*

Court then clarified its prior holding in *Bays* by stating:

> We disagree with the appellant that the provisions of the
> police civil service act exclude all other selection requirements
> for police officers. At first glance, the language quoted by the
> appellant from decisions of this Court and the act itself appears
> to support the appellant's position. Closer scrutiny reveals,
> however, that this is not so. This fact is best understood by
> looking at the purpose of the police civil service act. The
> design of the act is to set forth a system for the appointment,
> promotion, reduction, removal and reinstatement of police
> officers which best ensures that these decisions are made
> according to the comparative merit and fitness of police
> officers and not according to personal or political whim. This
> design has the dual result of protecting the job security of those
> police officers who are best qualified while also guaranteeing
> that the public is served by police officers of the highest merit.
> Accordingly, this Court's characterization of the act as
> complete and all-inclusive means that the act prescribes the
> sole provisions for appointing police officers *according to*
> *merit and fitness.* In this regard, the act stands alone. It
> provides all that is necessary for the appointment and
> promotion of the fittest applicants.

*Morgan*, 205 W. Va. at 39-40, 516 S.E.2d at 53-54 (emphasis in original).

Here, we do not find that the Commission's awarding of points for education

is the equivalent to a "screening device" as in *Bays.* Rather, we find that the awarding of

points for education is a discretionary factor developed by the Commission pursuant to the

authority bestowed upon it by the Police Civil Service Act. Under the Act, municipalities

are given authority to promulgate rules and regulations *as long as they are not inconsistent*

with the express provisions of the Act. We find little guidance in the statute or the case

law that would expressly require police departments to base promotions *solely* upon the

results of a written exam and the quantity of "experience" without giving any consideration to the *quality* of the officer's "experience." Rather, the consideration of education when awarding points for "experience" encourages promotions "according to merit and fitness," and is consistent with the purposes of the Police Civil Service Act.

Additionally, we reject Petitioners' argument that there is no rational basis for considering education under the rubric of "experience." As the circuit court explained,

> there is a rational basis for considering an officer's education level as a component of "experience" as set forth in the Act. . . . [O]fficers with a higher education tend to possess better analytical and decision-making skills, better communication skills, and tend to draft better reports, warrants etc. These skills may in turn aid an officer in the overall performance of his or her police work and interactions with the public in general. . . . [H]igher education is a legitimate factor in determining the best candidates for promotion to positions where the officer will train and supervise other officers.

The purpose of awarding points for an individual's education credentials is to ensure that our State's police officers are individuals of the highest caliber. Higher education is not a requirement or a "screening device" devised to eliminate or prevent candidates from promotions, but rather, higher education is one element of a carefully planned multi-point system used to promote officers. The Commission is not considering an individual's education *to the exclusion* of seniority, but in tandem as a balance and complement to the other elements of the rubric. After careful consideration, we find there is a rational basis for considering an officer's education and that said consideration under

13

"experience" is not inconsistent or in conflict with the provisions of the Police Civil Service Act.

As such, we find that the Berkeley County Circuit Court did not commit reversible error when it found that the Martinsburg Police Commission's consideration of higher education as a component of "experience" under the Police Civil Service Act was consistent with the Act's purpose of ensuring meritorious promotions. Having found the circuit court did not err in upholding the Commission's decision, the Petitioners' request for a writ of mandamus and an award of attorney's fees is denied as moot.

## IV.

## CONCLUSION

For the reasons set forth above, we affirm the October 3, 2017 order of the Circuit Court of Berkeley County denying Petitioners' appeal and petition for writ of mandamus and affirming the final order issued by the Martinsburg Police Civil Service Commission dated February 1, 2018.

Affirmed.